MISSISSIPPI STATE BOARD OF VETERINARY EXAMINERS, et al.
*v.* LOVE

No. 42607          March 11, 1963          150 So. 2d 532

*Delos H. Burks,* Asst. Atty. Gen., Jackson, for appellant.

*Ward & Ward,* Starkville, for appellee.

Jones, J.

This cause comes to us from the Chancery Court of Clay County where an order was entered by the chancellor directing that a mandatory injunction issue to the appellants directing that a veterinary license be issued to appellee under the grandfather clause of Sec. 6, Chap. 371, Laws of 1946 (Sec. 8914-06, Code of 1942).

This is the second appearance of this case in this Court and for a full understanding thereof and to save repetition here, we refer to Love v. Mississippi State Board of Veterinary Examiners, decided February 11, 1957, and reported in 230 Miss. 222, 92 So. 2d 463. This opinion will give a resume of the facts up to the time of its decision.

There are three assignments of error, the first two of which may be consolidated into one in that it is claimed therein that the bill should have been dismissed because the appellee had an adequate and speedy remedy at law and that the court erred in entering its final decree granting a mandatory injunction when the appellee had such a remedy at law.

(**Hn 1**) Under these assignments it is asserted the appellee's remedy was by certiorari. However, this contention was put at rest in the case of Mississippi Board of Veterinary Examiners, et al. v. Sistrunk, 218 Miss. 342, 67 So. 2d 378, where this Court held that neither mandamus nor a writ of certiorari was an adequate remedy and that a bill in chancery for a mandatory injunction is the only possible method by which appellee could obtain judicial review of the Board's order to ascertain ''whether it is supported by substantial evidence, or is arbitrary, capricious, and unlawful.''

The third assignment of error is that it is not within the province of the courts to disturb the findings of fact made by an administrative board, bureau or commission, when based upon substantial evidence, and when the officers did not act arbitrarily, unreasonably, capriciously or in abuse of discretion, or beyond their powers. That is the rule as announced in Mississippi State Board, etc. v. Watkins, 206 Miss. 330, 40 So. 2d 153, and the Sistrunk case, supra.

(**Hn 2**) It is contended that the chancellor made no finding of fact that the ruling of the Board was arbitrary, capricious, etc. It is true that the decree that was entered contained no such finding of fact. There is no finding of fact in the record and none appears to have been requested. It must be presumed, however, the lower court did as a matter of fact find that the action of the Board was either without substantial evidence to support it, arbitrarily entered, or an abuse of discretion. Hollingsworth v. Nix, et al., 211 Miss. 155, 51 So. 2d 229; McAllister v. Byrd, 212 Miss. 742, 55 So. 2d 435.

At the first hearing, the applicant himself and four other witnesses, residents of the general community where applicant lived, testified, all stating under oath that he had been engaged in business as a veterinary surgeon, doing veterinary dentistry surgery and medical work for a number of years, and specifically for ten

years before 1946. The applicant testified that when he was a boy he helped his father who did this kind of work, and then he worked with or under a Dr. Cain and later with and under a Dr. Wood. He went on his own in 1934. He was corroborated by the four witnesses mentioned. There was attached to his application a statement from nearly ninety people identifying themselves as cattlemen and representing and showing that the applicant had served them for a number of years as their veterinarian and had rendered effective services; that each of them lives and farms a number of miles from the nearest veterinarian and cannot consistently obtain the services of anyone other than Frank L. Love. There was also attached to the application affidavits as to his practice and as to his good moral character.

When the case came on for a second hearing after it had been remanded by the Supreme Court in 1957, the applicant again testified to the same facts and he was corroborated by five other witnesses who testified under oath.

The applicant testified, he was corroborated, and it is not denied, that for at least ten years he maintained a barn where he treated large animals and a kennel where he treated small animals. When his application was made, a member of the Board visited him and took an inventory of the medicines and equipment that he had. It is significant that at this hearing no point was made as to the type of equipment or the sufficiency of the equipment, appliances and tools and medicine that he had. In fact, the only comment made was by the man who took it, and he said it was an excellent list.

The only contrary evidence, save the one hereinafter mention, was by people who signed letters saying they had no personal knowledge and could not swear of their own personal knowledge that the applicant had been practicing veterinary medicine. Some of the veterinary surgeons testified who were in adjoining or

near counties that they had not heard of Frank Love as a veterinary surgeon. All of this was negative testimony. The proof for applicant was positive evidence. The investigating committee did submit a letter signed by a half-sister of the applicant, which said she left the community in 1941 and at that time Frank Love had not practiced any veterinary medicine. She returned in 1945 and said she understood that since 1941 he had done some practice. This witness was not introduced and there is no explanation of the relationship between her and the applicant other than being a half-sister. However, in the face of the positive, direct, and voluminous testimony to the contrary hereinbefore recited, we do not think this letter, when the lady was not introduced in evidence to testify, would amount to substantial evidence. It would be hard to believe in the face of the other parts of the record. It could not stand against the avalanche of evidence and facts introduced.

The applicant owned a farm of a few hundred acres, operated by tenants, and by employees operated a sawmill for a while. Some stress is placed upon the fact that the applicant, back in 1938 or 1939, or the latter part of the 1930's, took various jobs for a few months, or maybe several months at a time. He testified that this was to supplement his living because of the bad crop years and generally bad conditions where people were not able to pay his fees. However, he swore, was corroborated, and uncontradicted, that in all of these jobs, save one, he was working by the hour and permitted to leave the work whenever he got a call, and that he did leave the job and go to attend to his work as a veterinarian. On one job that he had, where he was not permitted to leave during working hours, he attended to the calls after working hours. This job lasted for only a few months. The additional revenue was necessary and we do not think he should be condemned for undertaking to do this work. **(Hn 3, 4)** The Board

seemed to put a good deal of emphasis on this feature of the case, and it seems to be the principal argument regarding his qualification under the grandfather clause. However, this clause does not say that he must have exclusively practiced, and it is not necessary that he exclusively devote his time to the practice of veterinary medicine, surgery and denistry. As said in one of the other cases, we think this was the type of men whom the legislature intended to cover by the grandfather clause. We think the lower court was correct in issuing the mandatory injunction requiring the issuance of a license. The case is therefore affirmed.

Affirmed.

*McGehee, C. J., and Arrington, McElroy and Rodgers, JJ.,* concur.