**John CHOMA, Plaintiff,**

v.

**Commissioner William J. O'ROURKE et al., Defendants.**

Court of Chancery of Delaware, New Castle.

Dec. 19, 1972.

Stephen B. Potter, of Sullivan, Potter & Roeberg, Wilmington, for plaintiff.

Victor J. Colombo and G. Thomas Sandbach, Asst. City Solicitors, Wilmington, for defendants.

DUFFY, Chancellor:

Plaintiff, a member of the Bureau of Police of the City of Wilmington, seeks an order determining that he is entitled to a disability pension under the Police Pension Law and the corresponding provisions of the Wilmington City Code.[1] Defendants are the Commissioner of Public Safety, the Chief of Police, the Police Surgeon, and all members and officers of the Board of Trustees of the Police Pension Fund. This is the decision on defendants' motion to dismiss for lack of subject matter jurisdiction and/or failure to state a claim upon which relief could be granted, and on plaintiff's cross-motion for summary judgment.

A.

Under the statute [2] a policeman applying for a disability pension must make written application to the Commissioner [3] and before a pension may be granted, the policeman must undergo a physical examination by a Board of Physicians consisting of the Police Surgeon, the officer's family physician and a third physician selected by the other members of the Board. After receiving the results of that examination with a statement by the Board as to how far, in its opinion, the officer is incapacitated from performing "regular active duty," the Commissioner is required to

---

1. The sections of the City Code vary somewhat in language from the statute but this does not affect the result.

2. The statute (32 Del.L., Ch. 113 as amended by 50 Del.L., Ch. 636 and 58 Del.L., Ch. 233) provides:

    "Section 1. Whenever a member of the police force of the City of Wilmington . . . who has performed faithful continuous service as such member for a period of not less than seven (7) years shall have become permanently incapacitated from performing such regular active duty, he may be retired by the Police Commissioners . . . from regular active service and placed upon the retired list. . . .

    "Section 2. . . . any member of said force deeming himself entitled to the benefits of this Act, may make written application to said Police Commissioners for that purpose. No member of said police force shall be placed upon said retired list unless he shall have first

    undergone an examination as to his physical condition to be made by a Board of Physicians, consisting of the Police Surgeon of the City of Wilmington, the family physician of the said police officer, and a third reputable physician of the City of Wilmington to be selected by the other members of said Board; said Board shall report in writing to the Police Commissioners the result of said physical examination together with a statement as to how far, in the opinion of said Board, the officer examined is incapacitated from performing regular active duty on said police force; upon the receipt of said report of said Board of Physicians, the Police Commissioners may retire such officer in accordance with the provisions of this Act."

3. The authority to grant pensions was transferred to the Commissioner of Public Safety by § A–101 of the Charter of Wilmington.

make a decision as to whether the applicant is entitled to a disability pension.

Plaintiff contends that he has met all eligibility requirements and the Commissioner's refusal to approve a pension was arbitrary and an abuse of discretion. Defendants say that the Commissioner's action was within his discretion and that, at any rate, plaintiff has an adequate remedy at law.

### B.

Defendants contend that the statutory procedure for obtaining a pension constitutes an adequate remedy at law and, in the absence of a provision by the General Assembly for appeal, the Commissioner's decision must be deemed to be final and conclusive. They say that the Commissioner's action was within his "exclusive discretionary administrative authority" under the law and, as such, is unreviewable.

This Court has not been asked to explicitly determine subject matter jurisdiction of police pension claims. In Miller v. City of Wilmington, Del.Ch., 285 A.2d 443 (1971), aff'd Del., 293 A.2d 574 (1972), Vice Chancellor Short determined the right of a Wilmington police officer to a pension but subject matter jurisdiction was assumed; it was not in issue between the parties.

Certainly it is within the power of the General Assembly to provide that the decision of the Commissioner shall be conclusive. 60 Am.Jur.2d, Pensions and Retirement Funds, § 71. The general rule is that, in the absence of governing constitutional provision, a right to appeal may be granted or withheld at the discretion of the legislature and it does not exist unless specifically granted by statute. 2 Am.Jur.2d, Administrative Law, § 557. It does not follow, however, that judicial power to review an administrative proceeding depends upon statutory appellate provisions. On the contrary, a court will review an administrative decision, even in the absence of such a statute, if the action by the agency was arbitrary or an abuse of discretion. 60 Am.Jur.2d, supra, § 71; 2 Am.Jur.2d, supra, § 556. This is so because in the administration of a statutory remedy, a discretion abused or exercised arbitrarily is no remedy at all. And equity will grant relief in such situations if there is no adequate alternative remedy available at law. Mississippi State Board of Veterinary Examiners v. Love, 246 Miss. 491, 150 So.2d 532 (1963); Howard Co. Jewelers v. New Jersey St. Board of Optom., 133 N.J.Eq. 4, 29 A.2d 742 (1943).

Defendants say, however, that plaintiff has adequate remedies at law under the Workmen's Compensation Act to recover for any injury suffered within the scope of his employment and by resort to the grievance procedure under the collective bargaining agreement between the City of Wilmington and the Fraternal Order of Police; the latter by its terms incorporates the provisions of the Police Pension Laws.

These contentions merit little discussion. Miller v. City of Wilmington, supra, expressly decided that in the absence of a provision in the statute to the contrary, the right to receive a disability pension and the right to receive workmen's compensation are independent rights. See also 3 McQuillin, Municipal Corporations, § 12.158 (3d ed. rev.). Similarly, contract rights under a collective bargaining agreement cannot be regarded as a remedy for an independent right to a police pension under statute. These too are separate rights, not alternative remedies for the same right.

### C.

I turn now to the contention that the Commissioner has abused his discretion in denying plaintiff a pension. To the extent the statute gives the Commissioner a discretion in considering a pension

application, he must exercise that discretion within limits fixed by the statute. And certainly he must follow the procedure which it calls for. Here, the Commissioner failed to substantially comply with the provisions of the law which require an examination and report by a Board of Physicians. And a decision based upon such failure cannot stand.

The statutory scheme clearly requires a report by the Board of Physicians with a specific content:

" . . . [S]aid Board shall report in writing to the Police Commissioners the result of said physical examination together with a statement as to how far, in the opinion of said Board, the officer examined is incapacitated from performing regular active duty on said police force; upon the receipt of said report of said Board of Physicians, the Police Commissioners may retire such officer in accordance with the provisions of this Act."

Defendants contend that the denial was based on a "written report" of the Board of Physicians and in his affidavit the Commissioner states:

"That John Choma was examined by Dr. Arthur Heather, Dr. Martin Gibbs, and Dr. Mustafa Oz, acting as the Board of Physicians under the Police Pension Fund, 32 Del.Laws 113, to determine the physical condition of John Choma, and that based upon their written medical opinions (two deciding that John Choma was capable of working light duty and one deciding that he was not capable of performing light duty) and other pertinent data, John Choma was denied a disability pension."

At his deposition the Commissioner explained this in more detail and, as I understand it, the only pertinent documents purporting to be written by any member of the Board were letters from Dr. Arthur Heather to plaintiff's attorney, and from

Dr. Martin Gibbs to Dr. Heather, and memos from Dr. Gibbs to Dr. Oz, and from Dr. Oz to Inspector White of the Bureau of Police. None of these was directed to the Commissioner, none purported to be a final "report" concerning plaintiff's physical condition. Only Dr. Heather's letter attempts to outline the results of his examination of plaintiff and a statement as to how far, in his opinion, plaintiff was incapacitated from performing duties with the Police Department. Dr. Gibbs' letter to Dr. Heather contains the results of his examination of plaintiff, but his recommendations fail to include any opinion as to the extent to which plaintiff was incapacitated from performing duties with the Police Department; his explanatory letter to Dr. Oz contains an assessment of plaintiff's physical limitations but fails to relate them to regular police duties. The memo by Dr. Oz merely reviews the letters from Dr. Gibbs and Dr. Heather and states his conclusions about the extent of plaintiff's disability.

Although plaintiff testified at deposition that Dr. Oz at one time had examined him, there is no record of a written examination report being submitted to the Commissioner for his consideration. The Commissioner, however, did testify that he relied heavily on Dr. Oz's *oral* representation of the opinions of other members of the Board concerning the correctability of plaintiff's condition and that he listened to a "long narrative" by Dr. Oz in which "all the facts were presented to me." He was unable to say that Dr. Oz had ever submitted a written report to him and none was produced.

Of course the Commissioner must rely upon the Police Surgeon for medical advice and he may get this in any way that he chooses. But not when the matter is covered by statute. The medical information relied on by the Commissioner substantially fails to meet the statutory requirement of a "written report" by the

Board of Physicians. It seems to me that this is more than a formality. Clearly, the statute envisions a coordinated effort by the members of the Board to accurately and fully report the results of their physical examinations of the applicant and to make recommendations regarding his ability to perform "regular active duty." The function of a "written report" by a Board of three physicians is to provide the Commissioner with a complete, accurate analysis of the applicant's physical condition and to minimize the personal bias of any individual physician. That objective is thwarted when individual letters not purporting to be the final report are relied upon as such by the Commissioner and when the required written report is replaced by an oral presentation by the Police Surgeon.

Under these circumstances, denying plaintiff's application for a disability pension without the benefit of a full written report as contemplated by the statute amounts to an abuse of discretion.

### D.

■ Plaintiff contends that his right to a disability pension is clear and that this Court should now determine that right. However, the General Assembly has placed in the Commissioner of Public Safety the power and duty to review applications for police pensions and to determine which of those are meritorious. The Court would be usurping that function if it were to consider the merits of plaintiff's claim without giving the Commissioner the opportunity to consider plaintiff's application. Compare Pierson v. DeLaWarr School District, Del.Ch., 282 A.2d 656 (1971). Plaintiff's motion will be denied on condition that the Commissioner obtain a written report of plaintiff's present physical condition from the Board of Physicians within thirty days and that he make a decision in light of that report within a reasonable time thereafter.

Order on notice.