508 So.2d 1049 (1987)
MISSISSIPPI STATE BOARD OF PSYCHOLOGICAL EXAMINERS
v.
Robert L. HOSFORD.
No. 56540.
Supreme Court of Mississippi.
April 29, 1987.
Rehearing Denied July 15, 1987.
*1050 Edwin Lloyd Pittman, Atty. Gen. by John T. Kitchens, Sp. Asst. Atty. Gen., Jackson, for appellant.
Dale Hubbard, Ferrell & Hubbard, Jackson, for appellee.
Before WALKER, C.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This case presents sensitive questions regarding the authority of a state-created board, charged with the governance of a *1051 learned profession, to interpret the canons of ethics of that profession and in accordance therewith to discipline a member of that profession. The case also presents questions regarding the scope of appellate judicial review of such disciplinary action.
Substantially, the case involves a charge that a psychologist disclosed patient confidences without the patient's consent and in violation of his profession's confidentiality principles. The state board found that the violation had occurred and suspended the psychologist's license for ninety days. The Chancery Court reversed. As we regard the action taken within the authority and discretion of the Board, we reverse and reinstate the order of suspension.

II.

A.
Robert L. Hosford, Ph.D., holds a license issued by the Mississippi State Board of Psychological Examiners to engage in the professional practice of psychology in this state. Dr. Hosford maintains his offices in Jackson, Mississippi, and exercises his license by practicing in the field of clinical psychology. Dr. Hosford was the Respondent below and is the Appellee here.
The Mississippi State Board of Psychological Examiners (the Board) has been organized and exists via statutory enactment. Miss. Code Ann. §§ 73-31-5, et seq. (Supp. 1980). At all times relevant hereto the Board was authorized and empowered to conduct hearings upon complaints seeking the disciplining of psychologists it has licensed and, where violation be found, to revoke or suspend such license. Miss. Code Ann. §§ 73-31-7(b)(4), (5) and 73-31-21 (1982). The Board is the Appellant here.
This case has its genesis in the psychologist-patient relationship between Dr. Hosford and Patricia F. Lindsey and her former husband, Jimmy G. Lindsey. That relationship came into being on December 31, 1981, when the Lindseys, then husband and wife, consulted Dr. Hosford in his professional capacity and sought counseling and advice regarding difficulties they were experiencing in their marital relationship. These consultations continued for a little over two months. During their course, from time to time Patricia Lindsey would meet with Dr. Hosford privately, at other times Jimmy Lindsey would meet with Dr. Hosford privately, and on still other occasions the Lindseys would jointly consult with Dr. Hosford.
In March of 1982 the Lindseys' marriage was clearly on the rocks as Patricia filed in the Chancery Court of Madison County, Mississippi, an action for divorce. Of immediate concern was the temporary custody of the parties' six-year-old son, Jon D. Lindsey. A temporary custody hearing was scheduled in Chancery Court for March 19, 1982. At that hearing Jimmy Hosford submitted an affidavit made by Dr. Hosford, dated March 18, 1982, setting forth the background of his professional relationship with the Lindseys and giving his opinion that temporary custody of the child should be placed with his father, Jimmy G. Lindsey. The giving of this affidavit has given rise to the present proceedings.
At some time prior to the temporary hearing Dr. Hosford talked with the attorney representing Jimmy G. Lindsey and furnished certain information to the attorney who then prepared a draft of the proposed affidavit. Dr. Hosford then reviewed the affidavit and made editing changes and corrections. The affidavit was then retyped in final form and was executed by Dr. Hosford on March 18, 1982, in the presence of a notary public.
In relevant part the affidavit states that Dr. Hosford counseled with Patricia Lindsey and Jimmy Lindsey both together and separately concerning their personal relationship as well as their respective relationships with their son; that during the course of these consultations Dr. Hosford reached conclusions regarding the "psychological traits of the parties including those which have a bearing on or relate to their respective concepts of parenthood in general and their respective responsibilities and roles as parents to their child in particular." The affidavit continued, making clear that the opinion to be given was "based upon his *1052 [Dr. Hosford's] counseling with the parties, his observations of them... ." In the affidavit Dr. Hosford then gave rather specific opinions regarding the parenting skills of the two parties, the details of which need not be recounted, except to say that the opinion of Patricia F. Lindsey was quite unfavorable. In the final analysis, Dr. Hosford gave his "professional opinion that the interest and welfare of the child will be best served and promoted by placing his care, custody and control with Jimmy G. Lindsey, ... ."
Patricia Lindsey did not consent to the giving of this affidavit. As the point is of some moment, we note the following colloquy between Dr. Hosford and counsel at the hearing before the Board.
Q. Did you ever at any time call Mrs. Lindsey and ask her whether or not it was all right for you to give this affidavit?
A. I did not.
Q. Did Mrs. Lindsey ever authorize you to give this affidavit?
A. She did not.
In the course of her testimony before the Board, Patricia Lindsey read the affidavit and stated that it was based upon information she had given Dr. Hosford in the course of her professional relationship with him and that she had not authorized him to release this information. If we understand the record correctly, Dr. Hosford stipulated before the Board that he "did not receive a signed waiver of the psychologist-patient privilege."[1]

B.
On March 9, 1983, Patricia F. Lindsey filed with the Mississippi State Board of Psychological Examiners a complaint against Dr. Robert L. Hosford wherein she charged Dr. Hosford with unauthorized, unprofessional and illegal disclosure of matters communicated to him and protected from disclosure by the psychologist-patient privilege. The matter came on for hearing before the Board on November 30, 1984. At that hearing Patricia and Dr. Hosford appeared personally and testified. Patricia established her prima facie case as recited above. Dr. Hosford defended on the alternative grounds that he disclosed no matters the confidentiality of which was protected or, in the alternative, that there was a "clear danger" to the child which created an exception to his profession's confidentiality principle and necessitated disclosure.
In due course on January 22, 1985, the Board rendered its final decision finding that Dr. Hosford had violated Principle 5 of the American Psychological Association's Ethical Principles of Psychologists[2] and *1053 further that this violation could not be excused under the clear danger principle, the Board finding "that the clear danger exception to Principle 5 pertains to only life and death situations." The Board exonerated Dr. Hosford from violation of the Mississippi statutory psychologist-patient privilege. Miss. Code Ann. § 73-31-29 (1972). By reason of Dr. Hosford's violation of APA Principle 5, the Board ordered Dr. Hosford's license to practice psychology in the State of Mississippi suspended for a period of ninety days.
Thereafter Dr. Hosford perfected his appeal to the Chancery Court of the First Judicial District of Hinds County, Mississippi. On the date of the hearing thereof, May 10, 1985, Dr. Hosford presented a motion to dismiss joined by Patricia Lindsey and claimed that the decision of the Board had become moot by virtue of Patricia's withdrawal of her claim. On the same day, apparently on the authority of the aforesaid motion and without examination of the record of proceedings before the Board, and ordered Dr. Hosford's license reinstated and all proceedings pertaining to the matter expunged.
The Board now appeals to this Court and asks reinstatement of its order of suspension.

III.
Dr. Hosford raises a number of premerits points in support of affirmance. First, he argues that the Board, as a quasi-judicial body, has no standing to prosecute this appeal. The point is without merit. A statutorily created board governing the practice of members of a profession in this state, when faced with an adverse decision of a Chancery Court via appellate review of the Board's action regarding one subject to the Board's authority, has clear standing to prosecute a further appeal to this Court. State Board of Psychological Examiners v. Coxe, 355 So.2d 669 (Miss. 1978) (implicitly recognizing the point); Mississippi Real Estate Commission v. Ryan, 241 So.2d 667, 668 (Miss. 1970); Mississippi State Board of Dental Examiners v. Mandell, 198 Miss. 49, 64, 21 So.2d 405, 498 (1945).
Dr. Hosford next argues that this matter is moot in that Patricia Lindsey has withdrawn her complaint against Dr. Hosford. She couples this with her argument that the Board has no standing to proceed. Patricia sought to withdraw her complaint after final decision by the Board, after that decision had been appealed to the Chancery Court, after she had settled her civil action[3] against Dr. Hosford and after she had recanted her testimony before the Board. In these circumstances, we consider her withdrawal ineffective to preclude the Board from proceeding further.
The Board's authority in such a context is analogous to that of the State of Mississippi when complaint is made by a citizen that someone has committed a crime. It may well be that as time goes by the complaining party loses interest in the matter or for other reason wishes to withdraw the charge. The State nevertheless has an interest in the prosecution of the accused independent of that of the prosecuting witness, and this interest is reflected in a right vested in the State to go forward with the prosecution notwithstanding the desire or wishes of the complaining party. Even more so where, after conviction and pending appeal, the original complainant wants to "drop the charges."
By the same token the Board of Psychological Examiners has a responsibility that the ethical principles of the psychology profession be respected and, where violations are called to its attention by one such as Patricia Lindsey, the Board has the authority to proceed, notwithstanding the subsequent contrary wishes of the complaining party. The Board's interest and authority are independent of those of the complaining *1054 patient. The Board's interest is in the integrity of the profession it regulates and vindication of the ethical principles thereof, to the end that the long range best interests of the consuming public may most effectively be protected. These interests transcend the wishes of a private citizen who may for whatever reason desire that the matter be dropped.

IV.
Another preliminary note. Proceedings seeking suspension or termination of the license of a professional are serious matters. See Miller v. State Board of Pharmacy, 262 So.2d 188, 189 (Miss. 1972). Quite literally one's ability to earn a living is at stake. Balanced against the professional's legitimate self-interest is the interest of the profession and the consumers of its services in honesty, competency and the observance of reasonable ethical principles.
In a variety of contexts we have held that disciplinary charges against a professional must be proved by clear and convincing evidence. Hogan v. Mississippi Board of Nursing, 457 So.2d 931, 934 (Miss. 1984); Levi v. Mississippi State Bar, 436 So.2d 781, 783 (Miss. 1983); this burden of proof rule applies as well to disciplinary proceedings before the State Board of Psychological Examiners.
Board decisions affecting the license of a psychologist are appealable. Miss. Code Ann. § 73-31-21(b) (1972). In such case the Chancery Court sits as an appellate court, as do we. The Chancery Court has no authority to proceed de novo. Rather, review is limited to the record which has been made before the Board. State Board of Psychological Examiners v. Coxe, 355 So.2d 669, 671 (Miss. 1978). The decision of a professional board in a matter regarding the discipline of one of its members may not be overturned where the decision is supported by substantial evidence. Smith v. Sullivan, 419 So.2d 184, 188 (Miss. 1982). Put otherwise, only where the decision is arbitrary and capricious may a court on appeal intervene.[4]Harris v. Mississippi Real Estate Commission, 500 So.2d 958, 961-62 (Miss. 1986); Mississippi Board of Nursing v. Belk, 481 So.2d 826, 832 (Miss. 1985); State Board of Psychological Examiners v. Coxe, 355 So.2d 669, 671 (Miss. 1978); Mississippi Board of Veterinary Examiners v. Love, 246 Miss. 491, 150 So.2d 532, 533 (1963).
The Chancery Court violated this premise with regard to the issue of consent. The record before the Board reflects that Patricia Lindsey gave no consent or otherwise waived her right to confidentiality. The Chancery Court, however, found consent, apparently basing this on the post-hearing motion filed by Dr. Hosford. The record before the Board, however, was never supplemented or corrected. Moreover, it appears that the motion joined by Patricia Lindsey withdrawing her complaint was made as a part of a "settlement" with Dr. Hosford. It was made three and a half months after the Board had made its findings that Principle 5 had been violated and after the Board had entered its order of suspension. Such a post-hearing, post-decision consent should not have been considered by the Chancery Court.
We emphasize further the role of the Board. It consisted at the time of six members, five of whom were licensed psychologists. One Board member was a person not a psychologist but who has expressed *1055 a continuing interest in the field of psychology. Miss. Code Ann. § 73-31-5 (Supp. 1984). Its members are selected by the governor from a list of nominees submitted by the Mississippi Psychological Association. Ordained by statute, the Board is the keeper of the conscience of those who engage in the professional practice of psychology in this state. From this it follows that the Board be the primary interpretor of the ethical principles to which psychologists in this state are subject.

V.
At all times relevant hereto, the Board had authority to suspend the license of one subject to its jurisdiction where that individual "has violated the current code of ethics of the American Psychological Association." Miss. Code Ann. § 73-31-21(a)(1) (1972). One provision of that code regards patient confidences. Principle 5 of the Ethical Principles of Psychologists requires respect for "the confidentiality of information obtained from persons in the course of their work as psychologists." Only two exceptions to the principle of confidentiality are found. The first, of course, is where the patient consents to the disclosure. In the second, even though no consent be given, the psychologist may disclose otherwise confidential information where "not to do so would result in clear danger to the person or to others."
Having well in mind our limited scope of review in matters such as this, there can be little doubt but that the matters disclosed in Dr. Hosford's affidavit[5] were protected from disclosure by the confidentiality strictures of Principle 5. Indeed, we perceive nothing in this appeal which turns upon disputed facts. All agree what happened. At issue is the Board's authority and the propriety of the sanction it has imposed.
Dr. Hosford reads Principle 5 much too narrowly. Much more than the words Patricia spoke are protected from disclosure. Communications from the psychologist to the patient are equally protected. Beyond that, opinions or impressions formed on the basis of patient communications are to be held in confidence. In other words, any fact of which the psychologist became aware, any statement he made or heard, and any opinion he formed arising out of the professional relationship with the patient is protected from disclosure.
It requires little imagination to understand that much taking place within the context of the professional relationship between a psychologist and his or her patient is and should be utterly confidential, nor that a psychologist who does not keep his mouth shut should be subject to censure. Before a psychologist may effectively apply his skills and benefit a patient, he must know the truth. The subject matter of psychological counseling is often such that many in need of such services are not comfortable revealing the truth and may be coaxed into doing so only upon the most solemn assurance that what is said will never be revealed to anyone, ever, under any circumstances. Perhaps more so than is the case with either lawyers or physicians, we recognize a public imperative that the psychology profession as a whole enjoy a impeccable reputation for respecting patient confidences.
The legislature has responded to these concerns with the enactment of Miss. Code Ann. § 73-31-29 (1972). This Court has decreed that as a matter of the law of evidence there is a quite comprehensive psychologist-patient privilege. See Rule 503, Miss.R.Ev.
*1056 We are not concerned with the situation where in a court of law there has been a judicial determination that a psychologist should disclose information and give opinions otherwise privileged. We say this to say that at the very least Dr. Hosford should have refused to make the disclosures until ordered to do so by the Chancery Court of Madison County.
If the disclosure had been made pursuant to a court order  even one that may subsequently have been reversed on appeal  we would not afford judicial sanction to the Board's imposition of a license suspension or other form of discipline. But where, as here, the psychologist proceeded unilaterally, voluntarily, without notice to or consent from his patient, and without prior authorization or direction from the Chancery Court, we hold that on this record the Board was well within its authority in finding there has been a violation of Principle 5.

VI.
By way of defense Dr. Hosford claimed before the Board that the information he disclosed and the opinion he rendered were excluded from Principle 5 by the "clear danger" exception. He renews that claim here. He argues that the welfare and best interest of the Lindseys' six-year-old son overrode the confidentiality principle.
The Board does not have carte blanche authority to say that Principle 5 means anything it wishes. Yet we do not consider it appropriate that we interject ourselves between the Board and Dr. Hosford regarding its interpretation of the clear danger exception. The Board construes the exception narrowly to apply only to cases where "life and limb" were in danger. Dr. Hosford would have us read it more broadly, to cover situations where the best interest of the child are at stake. In the context of this case, the danger at issue is that without the disclosure temporary custody of the child may not be placed with the parent better suited to exercise such custody in the child's best interest. The Board has considered this danger as one not within the scope of the ethical principle.
While today's opinion should not be read as suggesting that we will sanction any reading the Board may give to the language of the APA Ethical Principles, the reading the Board has given these principles in the case at bar is not one that is so arbitrary or unreasonable that we should intervene. It may be true that placement of temporary custody within the wrong parent may result in some emotional or psychological damage to the child. And, indeed, where that issue is presented to a Chancery Court and the issue and facts fully fleshed out, we are by no means prepared to say that the psychologist's lips will be forever sealed by the privilege (although we do not decide that point today as the matter is not before us).[6]
In the context of this record we recognize the Board's authority, in the construction of the clear danger exception to Principle 5, to determine that the requirement of confidentiality is paramount to the danger that temporary custody of the child might be placed with the wrong parent. Put otherwise, it is within the Board's authority, as the keeper of the conscience of the psychologists of this state, to consider the requirement of confidentiality of sufficient strength and importance that the clear danger exception should be read narrowly and limited to cases involving imminent danger to life and limb.
REVERSED AND RENDERED
WALKER, C.J., ROY NOBLE LEE, P.J., and HAWKINS, P.JJ., and DAN *1057 M. LEE, PRATHER, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] On May 10, 1985, some three and a half months after the Board decision suspending his license, Dr. Hosford filed with the Chancery Court a motion to dismiss his appeal and the complaint against him, asserting that "Patricia Lindsey gave her consent for disclosure of any and all communications which may or may not have appeared in the affidavit." This motion was joined by Patricia Lindsey who "affirms all things therein set forth." More will be said of this post-hearing consent below.
[2] Principle 5, considered by the Board under the authority of Miss. Code Ann. § 73-31-21(a)(1) (1972), reads as follows:

CONFIDENTIALITY
Psychologists have a primary obligation to respect the confidentiality of information obtained from persons in the course of their work as psychologists. They reveal such information to others only with the consent of the person or the person's legal representative, except in those unusual circumstances in which not to do so would result in clear danger to the person or to others. Where appropriate, psychologists inform their clients of the legal limits of confidentiality.
a. Information obtained in clinical or consulting relationships, or evaluative data concerning children, students, employees, and others, is discussed only for professional purposes and only with persons clearly concerned with the case. Written and oral reports present only data germane to the purposes of the evaluation, and every effort is made to avoid undue invasion of privacy.
b. Psychologists who present personal information obtained during the course of professional work in writings, lectures, or other public forums either obtain adequate prior consent to do so or adequately disguise all identifying information.
c. Psychologists make provisions for maintaining confidentiality in the storage and disposal of records.
d. When working with minors or other persons who are unable to give voluntary, informed consent, psychologists take special care to protect these persons' best interests.
See Ethical Principles of Psychologists, as printed in American Psychologist, Vol. 36, No. 6, pp. 633, 635-36 (June 1981).
[3] Although the record is sketchy on this point, apparently Ms. Lindsey had filed suit against Dr. Hosford in Circuit Court. Pursuant to a private settlement in consideration of $9,000.00, Ms. Lindsey executed a release of all claims against Hosford.
[4] While cases involving the discipline of other professionals shed light upon our manner of proceeding this day, we emphasize that attorney discipline cases differ in at least one important respect. Attorney discipline cases are within our original jurisdiction. This Court, not the legislature, is the arm of the State of Mississippi with principal authority and responsibility for the licensing, practice and disciplining of attorneys. Levi v. Mississippi State Bar, 436 So.2d 781, 783 (Miss. 1983); Matter of Mississippi State Bar, 361 So.2d 503, 505 (Miss. 1978). No substantial evidence or manifest error rule shields decisions of a Complaint Tribunal from our scrutiny, for we proceed de novo in such cases. See Brumfield v. Mississippi State Bar, 497 So.2d 800, 806 (Miss. 1986); Mississippi State Bar v. Strickland, 492 So.2d 567, 571 (Miss. 1986); Clark v. Mississippi State Bar, 471 So.2d 352, 357 (Miss. 1985); Levi v. Mississippi State Bar, 436 So.2d 781, 782 (Miss. 1983). Otherwise, attorney discipline cases may furnish appropriate analogies in matters regarding the regulation of other professionals.
[5] The record is not clear whether the Board considered Dr. Hosford's transgression to have been at the point of disclosure of the affidavit to the Chancery Court or at the earlier point of disclosure to Jimmy Lindsey's attorney of the information necessary for preparation of the affidavit. We will proceed here on the assumption that the violation of Principle 5 occurred when the affidavit was filed with the court. Because Dr. Hosford also had a professional relationship with Jimmy Lindsey, he was to some extent empowered to communicate otherwise confidential information to Jimmy's attorney. The ultimate dimensions of this "some extent" need not be addressed as the point was not directly presented below nor is it before us this day.
[6] We are aware that there is authority in other jurisdictions that the best interest of the child does override the psychologist-patient privilege in a child custody proceeding. D.V.D., 108 N.J. Super. 149, 260 A.2d 255 (1969); Critchlow v. Critchlow, 347 So.2d 453 (Fla.App. 1977); Matter of Von Goyt, 461 So.2d 821 (Ala. Civ. App. 1984); Dawes v. Dawes, 454 So.2d 311 (La. App. 1984); Miraglia v. Miraglia, 462 So.2d 507 (Fla.App. 1984); In Re Doe Children, 402 N.Y.S.2d 958, 960, 93 Misc.2d 479 (1978); People Ex Rel. Chitty v. Fitzgerald, 244 N.Y.S.2d 441, 40 Misc.2d 966 (1963).