# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-01513-SCT

*JAMIE S. WARNICK, M.D.*

*v.*

*NATCHEZ COMMUNITY HOSPITAL, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 2/7/2003 |
| TRIAL JUDGE: | HON. GEORGE WARD |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LISA JORDAN DALE |
| ATTORNEY FOR APPELLEE: | HEBER S. SIMMONS, III |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 12/02/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Jamie S. Warnick, M. D., a pediatrician, appeals from a decision by the Chancery Court of Adams County that affirmed the Natchez Community Hospital's suspension of her privileges in the area of neonatal resuscitation. Other than neonatal resuscitation, Dr. Warnick was awarded full pediatric privileges at the Hospital. We find that substantial evidence supported the suspension of neonatal resuscitation privileges and that Dr. Warnick's right to due process was not violated. We therefore affirm the chancery court's judgment.

**FACTS**

¶2. Dr. Warnick obtained associate medical privileges at the Hospital in 1997. The following year, Dr. Warnick applied for full privileges with the Credentials Committee. After Brian Stretch, M.D., voiced his concerns about Dr. Warnick's alleged difficulty with the intubation of children and asked that the grant of full privileges to Dr. Warnick be deferred, on May 18, 1998, the Credentials Committee recommended the full grant of privileges with the exception of neonatal resuscitation. The Credentials Committee further recommended that Dr. Warnick complete a neonatal intubation course within six months.

¶3. The Executive Committee met on May 26, 1998, to consider the Credentials Committee's recommendations, but deferred a decision until such time that Dr. Stretch could appear before it. Dr. Stretch appeared before the Executive Committee on June 23, and the Executive Committee granted Dr. Warnick full privileges; however her privileges in neonatal resuscitation were suspended until such time that Dr. Warnick successfully completed pediatric intubation training.

¶4. On July 16, Ray Bane, the Hospital's chief executive officer, hand delivered to Dr. Warnick's office a letter stating that she was summarily suspended for neonatal resuscitation privileges. Dr. Warnick sent two letters in response, and in each letter she accepted the decision that she needed to undergo further intubation training.

¶5. However, on July 31, Dr. Warnick, in writing, requested a hearing or appeal for the suspension of her neonatal resuscitation privileges. The Hospital's bylaws provide that a physician whose privileges have been summarily suspended may request an appeal within

2

fourteen (14) days of the suspension. Under the bylaws, Dr. Warnick's July 31st request was untimely.[1]

¶6. Also under the bylaws, the Executive Committee was required to review its decision to suspend privileges within 30 days. The suspended physician did not have a right to attend, testify at or present evidence at the review. On August 14, the Executive Committee affirmed its decision to suspend Dr. Warnick's neonatal resuscitation privileges.

¶7. This August 14 decision gave rise to a right to an appellate hearing before the Hospital's Governing Board, which appointed five (5) members of the medical staff to sit as an Appellate Review Committee. The Appellate Review Committee met on August 18, and Dr. Warnick appeared and presented evidence before it. She also admitted that she had not performed neonatal intubations within the last year and that she would benefit from the suggested training.

¶8. The Appellate Review Committee met on August 25 to review certain documents and then granted Dr. Warnick an opportunity to respond to the documents which generally supported the decision to suspend her neonatal resuscitation privileges. On September 22, Dr. Warnick appeared before the Appellate Review Committee and retracted her admissions of August 18. She made some accusations and left without hearing or cross-examining a witness who was to testify. The bylaws provided that Dr. Warnick was obligated to attend this meeting and that her failure to attend, without good cause, was a waiver of her rights of appeal and an assent to the adverse recommendation of the Appellate Review Committee.

---

[1]Dr. Warnick had 14 days from the receipt of notice of suspension. The notice was given on July 16. She should have requested an appeal by July 30.

¶9. The Appellate Review Committee enlarged the record with the testimony of four more witnesses on October 12. Dr. Warnick did not attend. The Appellate Review Committee affirmed the decision to suspend the neonatal resuscitation privileges.

¶10. Dr. Warnick appealed to the Adams County Chancery Court which ruled that the Hospital complied with its bylaw requirements for due process and affirmed the recommendations of the Appellate Review Committee and the Board of Trustees's final decision to suspend Dr. Warnick's neonatal resuscitation privileges pursuant to Miss. Code Ann. § 73-25-93(1).

## DISCUSSION

¶11. When faced with Hospital's decision to suspend or revoke privilege, a chancery court has a very limited role of judicial review. It has no authority to proceed de novo but must limit its review to the record which was made before the Hospital. *Wong v. Stripling*, 881 F.2d 200, 202 (5th Cir. 1989); *Miss. State Bd. of Psychological Examiners v. Hosford*, 508 So. 2d 1049, 1054 (Miss. 1987). "The legislature has clearly limited judicial surveillance of hospital disciplinary proceedings to the narrow inquiry of whether the hospital complied with the procedural due process requirements prescribed by its own bylaws." *Wong v. Garden Park Cmty. Hosp., Inc.*, 565 So. 2d 550, 551 (Miss. 1990).

¶12. Dr. Warnick filed her lawsuit in November 1998. At that time Miss. Code Ann. § 73-25-93 (1998) provided:

> (1) Any hospital licensed pursuant to sections 41-9-1 et seq. is authorized to suspend, deny, revoke or limit the hospital privileges of any physician practicing or applying to practice therein, if the governing board of such hospital, after consultation with the medical staff considers such physician to be unqualified

4

because of any of the acts set forth in section 73-25-83; **provided, however, that the procedures for such actions shall comply with the hospital and/or medical staff bylaw requirements for due process.**

(Emphasis added.) Therefore, the hospital and/or medical staff must abide by the bylaws for due process. *See* Miss. Code Ann. § 73-25-93. In addition, Miss. Code Ann. § 73-25-93 permits a physician to appeal a decision to the chancery court. *See* Miss. Code Ann. § 73-25-95. *See also **Wong***, 881 F.2d at 202.

¶13. Dr. Warnick raises a number of arguments on appeal; however, the questions of whether the Hospital followed its bylaws and violated Dr. Warnick's due process rights are dispositive of the case. Dr. Warnick contends that the Hospital failed to follow its bylaws for notification of her summary suspension. First, she argues that the hand-delivered notice of the summary suspension did not comply with the bylaws which required certified mail.

¶14. We find that Dr. Warnick was not denied due process. The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." ***Mathews v. Eldridge***, 424 U.S. 319, 333, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976); *see also **Dennis v. Dennis***, 824 So. 2d 604, 609 (Miss. 2002). Notice of governmental action which may deprive a person of life, liberty or property interests must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." ***Dusenbery v. United States***, 534 U.S. 161, 169, 122 S. Ct. 694, 151 L. Ed. 2d 597 (2002) (quoting ***Mullane v. Central Hanover Bank & Trust Co.***, 339 U.S. 306, 314, 319, 70 S. Ct. 652, 94 L. Ed. 865 (1950)).

¶15.   Dr. Warnick does not allege that she was deprived of a fair hearing; rather, she argues that she was not afforded due process because the manner in which notices were or were not given did not comport with the Hospital's bylaws.[2]   On July 31, Dr. Warnick requested a hearing or appeal.   The Hospital deemed this request to be untimely under its bylaws. Nevertheless, Dr. Warnick again requested an appeal on August 7.   On August 11, the Hospital notified Dr. Warnick of an appeal hearing, and on August 18, Dr. Warnick met with the Appellate Review Committee and presented evidence.   On August 26, the Appellate Review Committee sent documents to Dr. Warnick for her consideration and invited her to either appear at a hearing or submit a written response.   On September 22, Dr. Warnick appeared before the Appellate Review Committee and testified.   On October 12, the Appellate Review Committee issued its final decision suspending Dr. Warnick's pediatric resuscitation privileges.

¶16.   The purpose of the notice was to apprise Dr. Warnick of her right to hearing and to allow her opportunity to prepare a defense.   Here, the Hospital sidestepped its own bylaws in failing to notify properly Dr. Warnick of her right to a hearing.   However, Dr. Warnick's letter of July 20 was written in response to the so-called deficient notice given by the Hospital of the suspension of her pediatric resuscitation privileges.

¶17.   She later was afforded two separate opportunities to be present, present evidence and testify on her behalf.   Admittedly, Dr. Warnick was not given an opportunity to appear before the Executive Committee or the Board of Trustees before her privileges were suspended;

---

[2]Dr. Warnick also complains that she did not receive notice of meetings of and actions taken by the Executive Committee and the Board of Trustees.  The Hospital's bylaws, however, do not require such notice.

6

however, she later appeared twice before the Appellate Review Committee, a group appointed by the Hospital's Governing Body to review the actions of the Executive Committee and the Board of Trustees.

¶18. Dr. Warnick's claims are similar to those of a schoolteacher whose contract was not renewed. Proper notice was not given to the schoolteacher and she therefore missed her opportunity to appeal. However, she eventually had a full hearing, and this Court held that, even though "mandatory dictates" were not followed, the error was harmless. The school board's "default" was "effectively remedied" by the subsequent hearing. *See Noxubee County Bd. of Educ. v. Overton*, 483 So. 2d 301, 302-03 (Miss. 1985).

¶19. Here, any alleged violation of due process was "effectively remedied" by the two hearings afforded to Dr. Warnick. She does not complain that she was unable to present all relevant evidence. Her claims were heard "at a meaningful time and in a meaningful manner." Due process requires nothing more.

## CONCLUSION

¶20. There was no violation of Dr. Warnick's right to due process, and the Hospital's decision was supported by substantial evidence and was not arbitrary and capricious. Therefore, we affirm the chancellor's judgment affirming the Hospital's suspension of Dr. Warnick's neonatal resuscitation privileges.

¶21. **AFFIRMED.**

   **SMITH, C.J., COBB, P.J., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**
   **EASLEY, JUSTICE, DISSENTING:**

¶22. I respectfully dissent from the majority's opinion today. The majority fails to acknowledge that the Hospital failed to abide by its own bylaws. Despite these failures in following its own bylaws, the Hospital was allowed to continue with its case and receive a favorable ruling while Dr. Warnick had to strictly comply with the Hospital bylaws.

¶23. Dr. Warnick argued that the Hospital's failure to follow its bylaws violated her due process rights. That is, Dr. Warnick contends that the Hospital failed to follow its bylaws for notification of her summary suspension. Ray Bane, chief executive officer for the Hospital, hand delivered notice to Dr. Warnick's office on July 16, 1998. However, Dr. Warnick argues that *hand delivering* does not meet the requirements of notification *by certified mail* according to the bylaws. Article X Section 2(A) and (B) governs the notification requirements pursuant to the Hospital's own bylaws and states:

> A. The Chief Executive Officer shall be responsible for giving prompt written notice of an adverse recommendation or decision to any affected member who is entitled to a hearing or to an appellate review, **by certified mail**, return receipt requested.

> B. The failure of a member to **request a hearing** to which he/she is entitled by these Bylaws **within fourteen (14) days of the time of the posting in the United States Mail** of said written notice and in the manner herein provided shall be deemed a waiver of his/her right to such hearing and any appellate review to which he/she might otherwise have been entitled on the matter.

(emphasis added). Dr. Warnick argues that she never received notice by certified mail, return receipt requested, as required by the bylaws. Bane hand delivered the letter to her office on July 16, 1998, and the delivery of the letter imposed the summary suspension. The letter stated in part:

> As authorized by Article IX (Disciplinary Action), Section 2 (Summary Suspension) of the Medical Staff Bylaws and Rules and Regulations of Natchez Community Hospital, the Executive Committee hereby summarily suspends

8

your clinical privileges of resuscitation of infants effective upon receipt of this letter.

¶24. The chancery court found that the delivery of the letter in this manner triggered a fourteen (14) day time period in which Dr. Warnick had a right to request a hearing. Dr. Warnick requested a hearing on July 31, 1998, fifteen (15) days past the date of the letter. The letter was received by the Hospital on August 4, 1998 nineteen days after the date of the letter. Therefore, the chancery court found that Dr. Warnick's waived the hearing process because the request was not given within the fourteen-day time period as required by the bylaws.

¶25. Dr. Warnick claims that the chancery court erred by finding that the hand delivery of the letter met the notification requirements. She maintains that the notification as stated in the bylaws required delivery by certified mail and that the chancery court's ruling was contrary to law which requires a determination that the Hospital followed its own bylaws. Thus, she claims that she did not waive her right to appeal the summary suspension imposed by the Executive Committee. The record and the Hospital's brief reflect that Hospital acknowledges that it hand delivered the letter on July 16, 1998, and that the bylaws state that the notification should be made by certified mail, return receipt requested.

¶26. The bylaws clearly require that the Hospital's chief executive officer give prompt written notice of an adverse recommendation or decision to Dr. Warnick **by certified mail**, return receipt requested. The Hospital failed to provide notice in conformity with its own bylaws. Even the Hospital acknowledged that the letter was not sent certified mail, return receipt requested to Dr. Warnick. The Hospital declined to have a hearing on the matter of

9

the summary suspension because Dr. Warnick did not send a written request within 14 days of receipt of the notice of suspension.

¶27. Furthermore, the chancery court even stated in its opinion that the Hospital failed to follow its own bylaws, yet inexplicably found that the Hospital complied with its bylaw requirements. The chancery court erroneously made its own determination without limiting its review to the findings of the Appellate Review Committee. The problem as acknowledged below by the chancery court in this case is that the Committee *never* made a finding. The chancery court stated:

> Dr. Warnick raises two other issues which the Court will address. She suggests that the Appellate Review Committee failed to follow the directives of **Article X, Section 6., paragraph F.**, which **requires a finding** that: a.) Dr. Warnick was not denied a fair hearing; b.) The decision was not arbitrary or capricious; and, c.) The decision was supported by the evidence.
>
> **It is true that the Appellate Review Committee did not make those specific findings in the record. However, their failure to include those specific findings in the record did not infringe upon the due process rights of Dr. Warnick. Certainly it would be senseless to remand this case back to the Appellate Review Committee simply for them to dictate those findings into the record where the record sufficiently supports those findings.**

(emphasis added). Clearly, the Hospital failed to abide by its bylaws. However, the chancellor excused the Hospital for failure to comply with its own bylaws. What is more, the chancery court suggests that it is "senseless" to make the Hospital abide by the bylaws and make a finding.

¶28. The standard of review in this type of proceeding "clearly [limit] judicial surveillance of hospital disciplinary proceedings to the narrow inquiry of whether the hospital complied with the procedural due process requirements prescribed by its own bylaws." ***Wong v. Garden***

10

*Park Cmty. Hosp., Inc.*, 565 So.2d 550, 551 (Miss. 1990). The hospital and/or medical staff must abide by the bylaws for due process. *See* Miss. Code Ann. § 73-25-93.

¶29. The record reflects that the chancery court exceeded its limited scope of review in this case by determining that the record supports the findings. There were no findings to such a judgment. The chancery court cannot weigh the sufficiency of the evidence. Judicial review is clearly limited to whether the Hospital complied with the procedural due process requirements in its bylaws.

¶30. Finally, there are a number of troublesome issues raised by Dr. Warnick on appeal in regard to other alleged due process requirements that the majority has elected not to address.

¶31. For the above reasons, I must respectfully dissent from the majority opinion. I would reverse and render the judgment of the Chancery Court of Adams County.