586 So.2d 805 (1991)
MISSISSIPPI REAL ESTATE COMMISSION
v.
Charlie WHITE, Jr.
No. 90-CC-0527.
Supreme Court of Mississippi.
September 11, 1991.
John L. Maxey II, Samuel L. Begley, Maxey Pigott Wann & Begley, Jackson, for appellant.
Jessie L. Evans, Blackmon Blackmon & Evans, Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court:

I.
In August of 1988, a Jackson realtor handled two aborted real estate transactions and, by reason of his alleged failure timely to return earnest money deposits to the prospective purchasers, the Mississippi Real Estate Commission has revoked the broker's license. The question before us is whether the Commission's action is so lacking in evidentiary support that it must be regarded arbitrary and capricious.
The Circuit Court found the evidence inadequate on one of the Commission's grounds for discipline and reversed. With modifications, we affirm and remand.

*806 II.

A.
Charlie White, Jr. resides in Hinds County, Mississippi, and does business in the Jackson area under the trade name of The Network Realty Co. White has heretofore been the holder of a broker's license issued by the Mississippi Real Estate Commission and has at all times been subject to the provisions of the Real Estate Brokers License Law of 1954, Miss. Code Ann. §§ 73-35-1, et seq. (Rev. 1989), as amended, and the rules and regulations of the Commission. See Miss. Code Ann. § 73-35-35 (Rev. 1989).

B.
In early August of 1988, Rita C. Barnes, who worked in the central office of the Jackson Municipal Separate School District, engaged White's services to assist her in purchasing a residence located at 5232 Queen Eleanor Lane in Jackson. The property was apparently held at the time by an agency of the United States, alternately in the record referred to as the Veterans Administration (VA) or the Department of Housing and Urban Development (HUD). White pledged to assemble a financial package so that he could submit on Barnes' behalf a bid to the Government for the purchase of the property and, in that connection, on Friday, August 5, 1988, Barnes delivered to White her check for $500.00 as an earnest money deposit. White kept the check and never deposited it in his escrow account. White failed in his efforts to arrange financing adequate to undergird a viable offer, and no bid was ever submitted.
Ten days later, on the evening of Monday, August 15, 1988, Barnes had a telephone conversation with White at which time the two agreed that Barnes would come by White's office the next morning and pick up her $500.00 check. Barnes did not make it that morning, but, shortly after two o'clock in the afternoon on Tuesday, August 16, 1988, she appeared at White's office and asked for her check. White explained that he was busy preparing a HUD application on behalf of another client which was due to be submitted at the Federal Building in Jackson at three o'clock that afternoon and that he did not have time to deal with Barnes at the moment. White and Barnes engaged in three further Barnes-initiated, less than amicable verbal exchanges about the check that day, one on the telephone and two in person. By day's end White had not returned the check, but late that evening he fired off a letter to Barnes reciting his version of the facts and transmitting the check to her. White's return receipt from the U.S. Postal Service is dated August 17, 1988.

C.
The transaction White was so busy with that he did not have time to give Barnes her check yielded a somewhat similar charge. Ivadeen Ellis is a schoolteacher with the Jackson Public Schools and was interested in purchasing a HUD owned and advertised residence at 920 Garvin Street in Jackson. Ellis had delivered to White a $500.00 earnest money check dated "August, 1988." White did not deposit this check at the time. White offers a credible explanation why he was scrambling at the last minute on August 16 to get Ellis' bid in to HUD, but the point for the moment is the bid was unsuccessful, and the property Ellis had wanted was sold to someone else.
On Thursday, August 18, 1988, Ellis telephoned White and asked for the return of her check. There is a dispute whether Ellis' check would have been good if presented to the bank and whether Ellis had theretofore placed a stop payment on the check. What is undisputed is that White did not return the check but, instead, deposited it. It appears that, when the check was presented in early September to Trustmark National Bank, where Ellis held her account, the bank dishonored it for "not sufficient funds" and returned the check to White, who still did not return it to Ellis.

D.
On August 22, 1988, Barnes filed a sworn complaint with the Mississippi Real *807 Estate Commission detailing her version of the facts and charging White with unprofessional conduct. Ellis followed with a similar detailed complaint on September 27, 1988, emphasizing that at the time White had still not returned her check. In due course, the Commission administrator investigated the two charges and filed a formal complaint against White, later amended, summarizing the facts of the Barnes and Ellis complaints, and charging that
The above described conduct of respondent White constitutes a violation of the Real Estate Brokers License Law of 1954, as amended, and more specifically, § 73-35-21(f) and (m):
(f) Failing, within a reasonable time, to account for or to remit any monies coming into his possession which belong to others, or commingling of monies belonging to others with his own funds;
(m) Any act or conduct, whether of the same or a different character than hereinabove specified, which constitutes or demonstrates bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealing; ...
The respondent White is in further violation of Rules 24 and 25 of the Mississippi Real Estate Brokers License Law of 1954, as amended:
24. Brokers are responsible at all times for deposits and earnest money accepted by them or their salesmen, irrespective of whether such funds are paid to the seller or the seller's and/or buyer's authorized agents, such as an escrow holder; and the brokers are required to promptly account for and remit the full amount at the end of consummation or termination of transaction. Salesmen are required to pay over to the employing broker all deposits and earnest money immediately upon receipt thereof. Earnest money must be returned immediately when the purchaser is rightfully entitled to same. Failure to comply with this regulation shall constitute grounds for revocation or suspension of license.
25. When for any reason the owner fails or is unable to consummate the deal, the broker has no right to any portion of the money deposited with him by the purchaser, even though the commission is earned. The money must be returned to the purchaser and the broker should look to the owner for his compensation.
The Commission held an evidentiary hearing where Barnes and Ellis appeared and gave sworn testimony and were cross-examined by White's lawyer. White testified at length and sought to explain and justify his conduct and his handling of the checks. On March 23, 1989, the Commission released its decision, finding that on the facts White had violated Sections 73-35-21(f) and (m) and Commission Rules 24 and 25. Significantly, the Commission's findings and conclusions are in their wording verbatim identical to the charge made in the complaint, as quoted above.
The Commission further found and took notice of its prior order of September 1, 1988, suspending White's license by reason of his changing his office and principal place of business without notifying the Commission and, further, because he suffered an adverse judgment in a civil action and did not report the matter to the Commission.[1] The Commission ordered White's license revoked.
*808 White appealed to the Circuit Court of the First Judicial District of Hinds County. On April 24, 1990, that Court entered a detailed and thoughtful order holding that the evidence was "insufficient to support a finding of a violation of Section 73-35-21(f) [failure to return earnest money deposits]." On the other hand, the Circuit Court said it could not say the evidence was insufficient to support a violation of Subsection (m), and, because the Commission did not make separate findings on each charge, the Court ordered the matter remanded to the Commission for further proceedings on the question of whether "White's conduct is sanctionable under Section 73-35-21(m)." The Court found that, because the two earnest money checks were never in fact deposited, White never received any "earnest money." Because of this, the Court held White's conduct did not come within Rules 24 and 25.
The Commission now appeals to this Court.

III.
Before the Mississippi Real Estate Commission where he faced the threat of suspension or loss of his broker's license, White was protected by familiar statutes that required that the "testimony ... clearly establish ... the guilt of the respondent." Harris v. Mississippi Real Estate Commission, 500 So.2d 958, 963 (Miss. 1986). In State Board of Psychological Examiners v. Hosford, 508 So.2d 1049 (Miss. 1987), we observed:
In a variety of contexts we have held that disciplinary charges against a professional must be proved by clear and convincing evidence.
Hosford, 508 So.2d at 1054.
On review, however, the Circuit Court had no authority to intervene lest it find the Commission's decision was arbitrary and capricious, a standard we have equated with our familiar substantial evidence rule limiting our scope of review of trial court findings of evidentiary and ultimate fact. Harris v. Mississippi Real Estate Commission, 500 So.2d 958, 962 (Miss. 1986); Smith v. Sullivan, 419 So.2d 184, 187-88 (Miss. 1982); Mississippi Real Estate Commission v. Ryan, 248 So.2d 790, 793-94 (Miss. 1971).

IV.
Our first question is whether White handled funds belonging to Barnes and Ellis so that he was subject to the statutory regulations of Subsections (f) and (m) and Commission Rules 24 and 25. The statute uses the term "monies." Rule 24 uses the terms "deposits" and "earnest money." Rule 25 uses the term "money." The Circuit Court relied on the fact that White never deposited the checks[2] and held that he has not (mis)handled monies within the statute and rules.
On a limited point, we agree. White's failure to deposit the checks certainly precludes any finding that he improperly commingled monies belonging to Barnes or Ellis with his own funds. On the other hand, we think the Circuit Court read too narrowly when it held the statute and rules inapplicable to undeposited checks. We put our head in the sand if we pretend that checks have not through custom and usage become the equivalent of "monies" or "deposits." Checks may not be legal tender but they are certainly economic tender. They are negotiable instruments. More than a hundred years ago, the Supreme Court remarked to this effect and observed any other view

*809 would be a startling doctrine in the marts of commerce of this country, where money is usually transferred by bank checks, and may be fairly presumed to change hands on the check being given.
Poorman v. Woodward, 62 U.S. (21 How.) 266, 275, 16 L.Ed. 151, 154 (1859). A broker's refusal to return undeposited checks differs only from a refusal to return deposited funds in the sense that the maker of the check might win the race to the bank and place a stop payment order, which itself would not constitute a defense on the check but would merely preclude the payor bank's paying the check so that the maker might offer extraneous defenses in an action. See Citizens National Bank v. First National Bank, 347 So.2d 964, 968 (Miss. 1977); Guaranty Federal Savings Bank v. The Horseshoe Operating Co., 793 S.W.2d 652, 656 (Tex. 1990). We hold that the Circuit Court erred as a matter of law when it held statutory Subsection (f) and Rules 24 and 25 inapplicable in the case of undeposited earnest money checks.

V.
Barnes' dealings with White are contentious and confused. Fortunately, most relevant facts appear without dispute. Barnes had given White her $500.00 check on August 5, 1988. Prior to August 15, it had become clear that the necessary financial package could not be assembled so that Barnes could make a credible bid on the Queen Eleanor Lane property. When Barnes and White talked on the telephone on the evening of August 15, Barnes was of right entitled to have her check returned to her.
When Barnes arrived at White's office after two o'clock on August 16, without dispute White was frantically trying to assemble the necessary papers to make and present Ellis' bid at the HUD office in the Federal Building by three o'clock. White did not hand over the check in spite of two in-person requests at the office, an intervening telephone call, and a later encounter outside the Federal Building in downtown Jackson. What White did was, on that same night, August 16, 1988, write Barnes a detailed letter defending his handling of the matter and returning the check. The return receipt satisfies us that White mailed this letter and check to Barnes on August 17, 1988.
We agree with the Circuit Court when it said:
As simple as the act of handing over a check may seem, it cannot be said that a broker attending to another pressing matter, must interrupt that matter for a client arriving several hours late for an appointment, at the risk of being deemed incompetent, untrustworthy, dishonest or fraudulent.
It is true Rule 24 required that at the "termination of transaction" a broker return the check "immediately when the purchaser is rightfully entitled to same." White did not offend the Rule on these facts  where he waited until he was through with the Ellis transaction and then wrote a letter to Barnes transmitting her check, mailing it the following morning. As a matter of law, White acted with reasonable promptness under the circumstances. That he could have acted more promptly is beside the point. The Commission's decision to the contrary may be safely branded arbitrary and capricious.

VI.
The Ellis complaint is another matter. Viewing the facts as we must on this appeal, at some point prior to August 16, 1988, Ellis delivered her $500.00 check to White. For whatever reason, the bid White prepared and submitted to HUD on Ellis' behalf seeking to purchase the property at 920 Garvin Street was unsuccessful. When on August 18, 1988, Ellis called White and asked return of the check, she was legally entitled thereto. White did not return the check but instead held it and later deposited it in his escrow account with State Mutual Federal Savings and Loan. Trustmark National Bank did not honor the check  whether for insufficient funds or because of Ellis' stop payment order is not important. Indisputably through and including the date of the hearing, *810 White had not returned the check to Ellis.
So long as he held it, White had the power to proceed on the check, either by civil action, in which event Ellis would be forced to assert her defenses, or by threatened criminal prosecution for passing a bad check. The Commission would have been well within its prerogatives to hold that White's treatment and use of the Ellis check constituted a failure timely to return an earnest money deposit within Commission Rule 24. Moreover, we cannot begin to suggest that White's handling of the Ellis check did not constitute "bad faith, incompetency or untrustworthiness, or dishonest, fraudulent or improper dealing within Section 73-35-21(m)."

VII.
There is a final feature of this matter which is troubling on many fronts. In the case of both the Barnes and Ellis matters, White received and held earnest money checks. For reasons not made clear, he held the Barnes check for at least ten days without depositing same (and then could not put his hands on it when Barnes demanded its return). In the case of the Ellis check, White told her on August 18, 1988, that he had merely "put it in his pocket."
One does not have to be an expert in real estate transactions to see the hazards of holding earnest money checks undeposited. In point of fact, some three months prior to the events in question but effective only thereafter, on January 1, 1989,[3] the Legislature amended Section 73-35-21(f) to provide, in addition to the language quoted hereinabove,
Every responsible broker procuring the execution of an earnest money contract or option or other contract who shall take or receive any cash or checks shall deposit, within a reasonable period of time, the sum or sum so received in a trust or escrow account ... pending the consummation or termination of the transaction. "Reasonable time" in this context means by the close of business of the next banking day.
At the hearing before the Commission, White offered a notice he had received from the Jackson HUD office dated June 9, 1988, providing, in relevant part:
Effective immediately, all earnest money deposits received by brokers must be deposited in their escrow accounts without waiting to see if a contract is accepted. NO EXCEPTIONS!!!
Curiously, White urges that this June 9 bulletin is what required that (some two-plus months later) he go ahead and deposit Ellis' check at a time when her bid had failed and Ellis was entitled to the check's return. What White fails to note is that a combination of amended Section 73-35-21(f) and the HUD memo  if they had applied and been enforceable  mandated that he deposit the Ellis check one day within his receipt of same, period!
There are two questions of process, however, and they are important. The statutory mandate that he deposit checks such as those he received from Ellis and Barnes by the next banking day after his receipt may have been enacted April 26, 1988, but it had not become a part of this state's positive law in August and September of 1988, when White was handling the Barnes and Ellis checks. The Commission's present suggestion that we proceed under amended Section 73-35-21(f) likely offends constitutional bans on ex post facto laws. U.S. Const. Art. 1, § 10; Miss. Const. Art. 3, § 16 (1890).
Even if the amendment be deemed merely declaratory of the existing law  and HUD told him the same thing on June 9, 1988, White says this violation was not a part of the charge leveled against him and, more importantly, this was not an offense the Commission found as a basis for revoking his license. A careful reading of the transcript reflects a thorough factual inquiry into White's handling of the Barnes and Ellis checks and the fact that they were not deposited. Candor requires concession, however, that before the Commission no one considered that White was being charged with failure to make timely *811 deposits. The Commission's complaint against White made no such charge. The Commission's findings of statutory and rule violations made no such finding.
There is a contra dimension, before we credit White's complaint that the Commission is proceeding before this Court unfairly and by reference to a charge of which he had no advance notice. The fact of White's tardiness in depositing the two checks was thoroughly explored. In the case of Ellis' check, White says he waited because Ellis said there was not enough money in the bank to cover the check at the time, although Ellis says that she told him she would deposit sufficient funds when White told her it was time for him to deposit the check. In Barnes' case, Ellis offers no real excuse for not depositing the earnest money check. This arguably offends Section 73-35-21(m), if not amended Section 73-35-21(f).

VIII.
In the end, and in summary, we find that insofar as the Commission may have based its final action on a finding that, with respect to Barnes, White had offended Section 73-35-21(f)'s prohibition upon failing in a reasonable time to account for or remit monies or the commingling of monies with others, and insofar as the finding relied on Commission Rules 24 and 25, it was arbitrary and capricious and may not withstand judicial review. We similarly refuse to credit the Commission's present argument that White offended amended statutory Subsection (f) for the reason that the amendment had not become effective in August and September of 1988 and for the further reason that White was not, prior to the hearing, given fair notice thereof.
Conversely, the arbitrary and capricious limitation upon judicial review precludes our disturbing the action of the Commission insofar as it may have disciplined White with respect to the handling of the Ellis check under the pre-1989 version of Section 73-35-21(f) or (m) or Commission Rules 24 and 25. Because we cannot say with confidence what the Commission's decision would have been had it properly applied the rules of law articulated here, we affirm so much of the decision of the Circuit Court as remands to the Commission but modify that decision to require that the Commission conduct such further proceedings that may be appropriate not inconsistent with this opinion.
AFFIRMED AND REMANDED WITH MODIFICATIONS.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN and McRAE, JJ., concur.
BANKS, J., not participating.
NOTES
[1] Miss. Code Ann. § 73-35-15(1) provides

Every person, partnership, association or corporation licensed as a real estate broker shall be required to have and maintain a definite place of business within this state, which shall be a room either in his home or an office elsewhere, to be used for the transaction of real estate business, or such business and any allied business ...
The said place of business shall be designated in the license. In case of removal from the designated address, the licensee shall make application to the commission before said removal, or within ten (10) days after said removal, designating the new location of such office, whereupon the commission shall forthwith issue a new license for the new location for the unexpired period.
The Commission found that on November 3, 1987, White changed his principal place of business from 375 West Northside Drive in Jackson to Suite 260, 4795 McWillie Drive, but failed to notify the Commission thereof until June 6, 1988. Commission Rule 28 provides:
Every licensee shall, within ten days, notify the Real Estate Commission of any adverse decisions of any court of competent jurisdiction as the results of any suits or judgment, civil or criminal, in which the licensee appeared as the defendant.
The Commission found that on May 3, 1988, a judgment was entered against White in the Chancery Court of the First Judicial District of Hinds County, Mississippi, in the amount of $5,475.52 and that White had failed to notify the Commission of the fact of this judgment within ten days.
[2] White did deposit Ellis' check, somewhat tardily, only to have the bank on which it was drawn dishonor it.
[3] See Miss. Laws ch. 477, §§ 11(f) and 18 (1988).