612 So.2d 1075 (1992)
THE MISSISSIPPI BAR
v.
James M. HALL.
No. 91-BA-0206.
Supreme Court of Mississippi.
October 29, 1992.
Rehearing and Modification Denied January 28, 1993.
Charles J. Mikhail, Jackson, for appellant.
No Brief Filed for appellee.
En banc.
ROY NOBLE LEE, Chief Justice, for the court:
The Mississippi State Bar (the Bar) filed a complaint to begin this action on June 26, 1989, alleging that attorney James M. Hall had violated Rules 1.1, 1.3, 1.4 and 1.16 of the Mississippi Rules of Professional Conduct and the attorney's oath under Miss. Code Ann. § 73-3-35 (1972) in his representation of a client in a personal injury case. Although served with a copy of the complaint, Hall did not answer it, resulting in the Bar's application to the Clerk of this Court for an entry of default against him on November 8, 1989. The Clerk entered the default on that day. A hearing was set for April 3, 1990, on the Bar's motion for default judgment in accordance with Rule 55(b) of the Mississippi Rules of Civil Procedure.
Hall appeared before the Tribunal on April 3 and filed a motion to set aside the entry of default and for permission to allow him to answer the Bar's complaint. The Tribunal denied Hall's motion and entered a default judgment against him, then heard Hall on the question of punishment. On January 26, 1991, the Tribunal filed its final judgment, finding that Hall had violated the rules alleged by the Bar and issuing a private reprimand to Hall. From that judgment, the Bar appeals and presents the following issue for discussion by this Court:

DID THE COMPLAINT TRIBUNAL IMPOSE UPON APPELLEE, JAMES M. HALL (MR. HALL), THE APPROPRIATE DISCIPLINE (i.e., A PRIVATE REPRIMAND) UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE, PARTICULARLY IN VIEW OF MR. HALL'S RECORD OF PRIOR DISCIPLINE FOR SIMILAR CONDUCT?

FACTS
Hall undertook the representation of Mrs. Effie Mae Rankin in the latter part of 1984. Mrs. Rankin had been involved in an automobile accident and received serious injuries while on a sight-seeing tour through Arkansas with her friend, Mary *1076 Lou Lott, who was driving the car. Mrs. Lott and the driver of the other car involved in the accident were both killed. The other driver had a $25,000 liability policy with State Farm, which Hall successfully recovered through settlement in December of 1985.
Hall also began negotiating with Mrs. Lott's insurer, USF & G. Mrs. Lott's policy had a liability limit of $100,000 and uninsured motorists' coverage of $25,000. Her family also owned two other cars with the same amount of uninsured motorists' coverage. Within a month of the accident, Hall obtained a payment of $5,000 from USF & G for Mrs. Rankin's medical expenses. Hall continued settlement negotiations with USF & G to no avail and on April 30, 1985, USF & G interpled $75,000 in the United States District Court for the Southern District of Mississippi, naming as defendants Mrs. Lott's estate and heirs and Mrs. Rankin.
A settlement agreement was negotiated and incorporated into a court order dated October 21, 1987. Under the agreement, USF & G agreed to pay Mrs. Rankin $8,000 of the funds interpled to the court and an additional $20,000.
However, the payments were conditioned upon Mrs. Rankin and Hall first executing total releases in favor of USF & G, Mrs. Lott's estate and heirs, opposing attorneys, Medicaid and Medicare. Medicare had paid $24,081.28 in medical benefits to Mrs. Rankin for treatment of injuries resulting from the accident through May 6, 1988, and Medicaid paid approximately $1,500.
The Bar complaint stated that Mrs. Rankin found it increasingly difficult to contact or communicate with Hall after the settlement was reached. Hall did not prepare the releases required to obtain the funds from the settlement. After months spent trying to contact Hall, Mrs. Rankin finally wrote him on January 28, 1988, stating that she had retained another attorney, Briley Richmond, to represent her in the matter and that Hall was discharged. Richmond then attempted to contact Hall and was also unable to do so for some time. As a result of the delay in executing the releases, Mrs. Rankin received a notice from the Medical Group of Hattiesburg on March 24, 1988, that they would not see her until her bill had been paid and, later, notice from Medicaid that it would no longer cover her.
The docket sheet from federal district court indicates that on April 14, 1988, an order was entered allowing the law firm of Franke, Rainey & Salloum to interplead the $28,000 to the clerk of the court. The money would then be paid to Mrs. Rankin when she and her attorney had complied with the terms of the court's October 21, 1987, order. Mrs. Rankin finally received her share of the proceeds from the settlement, $7,568.43, on August 21, 1989, almost two years after the settlement agreement.
In his defense, Hall stated that around the same time as Mrs. Rankin's case came to trial, he became involved in four election contests in Stone County as a lawyer or witness, resulting from his position as attorney for the board of supervisors. These matters caused him to be out of his office a great deal for three to four months and unavailable for walk-in consultations. However, he claimed that, if Mrs. Rankin had made an appointment, he would have seen her. He did not prepare the releases, he claimed, because he thought that the parties to be released were to prepare them. However, the federal court's order expressly stated that he should prepare them.
Hall also testified that he underwent a great deal of difficulties related to his marriage about this same time. His home burned in October of 1986. He and his two sons moved to his parents' home and his wife and daughter moved to her parents' home. His marriage deteriorated and he and his wife divorced in December of 1986, with his wife receiving custody of the children. He sought counselling as a result of his broken marriage. In November of 1987, his wife illegally took possession of their renovated house. She sought modification of the original divorce decree in October of 1988, at which time he gained custody of the young children. She again *1077 sought modification of the custody decree in March of 1989, unsuccessfully.
Hall introduced a list of activities in mitigation of his discipline. He was active in his church, past Master of the Wiggins Masonic Lodge, legal advisor to the Little Red Schoolhouse Committee of the Board of the Eastern Star, acting family master for Stone County for two to three years preceding the hearing and the attorney for the board of supervisors.
The Bar offered a prior judgment against Hall as an aggravating factor. The Bar filed the complaint resulting in that judgment on February 13, 1989. Judgment was entered against Hall in cause number 89-B-750 on May 17, 1990, after a hearing held on April 3, 1989, the same day as the first hearing in the case sub judice. That case involved Hall's representation of Major Parks during late 1986 and early 1987. The Tribunal found Hall guilty of neglect in handling the case, by allowing a default judgment and garnishment to be entered against Parks in his child custody case while Parks was serving in the military in Korea. The Tribunal issued a private reprimand against Hall and ordered him to refund the $500 fee charged to Parks, from which he did not appeal.
In arguing his motion to set aside the default judgment, Hall claimed that he had not responded to the Bar's complaint because he had stopped opening his mail from the Bar, although he admitted that he had received a copy of the Bar's complaint. He waited until the weekend before the April 3, 1990 hearing to open all of the accumulated mail from the Bar. The Bar filed its brief in this appeal on October 9, 1991. On November 15, 1991, Hall received an extension of time to file his brief until November 29, 1991. Hall never filed a brief.

DISCUSSION

WHAT IS THE APPROPRIATE DISCIPLINE FOR JAMES M. HALL UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE?
As has been stated numerous times, this Court conducts a de novo review in a bar disciplinary matter which includes a review of the pleadings, the facts and the sanctions imposed. Mississippi State Bar v. Smith, 577 So.2d 1249, 1251 (Miss. 1991); Mississippi State Bar v. Varnado, 557 So.2d 558, 559 (Miss. 1990); Hoffman v. Mississippi State Bar Ass'n., 508 So.2d 1120, 1124 (Miss. 1987); Myers v. Mississippi State Bar, 480 So.2d 1080, 1089 (Miss. 1985).
We note at the outset that Hall failed to file a brief in this matter, even after the clerk of this Court granted him additional time in which to file. Ordinarily, such failure is "tantamount to a confession of error." Mississippi Bar v. Attorney D., 579 So.2d 559, 561 (Miss. 1991); Dethlefs v. Beau Maison Development Corp., 458 So.2d 714, 717 (Miss. 1984); State v. Maples, 402 So.2d 350, 353 (Miss. 1981).
The Bar argues that a private reprimand is simply not sufficient punishment under the facts of this case, particularly considering Hall's prior disciplinary record for substantially similar neglect of a client's case. Hall was charged with violating Mississippi Rules of Professional Conduct Rule 1.1, which demands that the lawyer provide competent representation to the client; Rule 1.3, which demands that the lawyer act with reasonable diligence and promptness in his representation; Rule 1.4, which provides that the lawyer keep the client reasonably informed about the status of a matter and comply with reasonable requests for information; and Rule 1.16(a) and (b) which demand that the lawyer withdraw from the representation where his physical or mental condition impairs his ability to represent the client.
This Court has listed several factors which it considers in determining the appropriate discipline for attorney misconduct. They are "(1) the nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of the dignity and reputation of the profession; (4) the protection of the public; and (5) the sanctions imposed in similar cases." Mississippi State Bar v. Blackmon, 600 So.2d 166, 173 (Miss. 1992); Mississippi Bar v. *1078 Strauss, 601 So.2d 840, 844 (Miss. 1992); Attorney Q v. Mississippi State Bar, 587 So.2d 228, 234 (Miss. 1991); Fougerousse v. Miss. State Bar Ass'n, 563 So.2d 1363, 1366 (Miss. 1990). However, the most important consideration in imposing sanctions is that the punishment be sufficient to "vindicate in the eyes of the public the overall reputation of the bar." Mississippi State Bar Ass'n. v. A Mississippi Attorney, 489 So.2d 1081, 1084 (Miss. 1986). Accord, Mississippi State Bar v. Smith, 577 So.2d 1249, 1252 (Miss. 1991).
In a number of cases of attorney misconduct, this Court has also considered the misconduct under the American Bar Association's Standards for Imposing Lawyer Sanctions (1986). Factors to consider under those standards include (1) the duty violated; (2) the lawyer's mental state; (3) the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors. Blackmon, 600 So.2d at 173. Foote v. Mississippi State Bar Ass'n., 517 So.2d 561 (Miss. 1987), also quoted ABA Standard 4.42, which reads: "[s]uspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." Id. at 567.
Fougerousse v. Mississippi State Bar Ass'n., 563 So.2d 1363 (Miss. 1990), involved a pattern of neglect which prejudiced two of Fougerousse's clients. He, like Hall, allowed a summary judgment to be entered against him in the Bar proceeding. This Court stated that, "appellant has displayed a distinct pattern of delay, tardiness and denial in the representation of certain clients and throughout his own defense of the matters now before this Court." Id. at 1366. The Court affirmed the Tribunal's sanction of two 90-day suspensions to run concurrently. Id. at 1367.
Steighner v. Mississippi State Bar, 548 So.2d 1294 (Miss. 1989), involved a case of attorney neglect. Steighner also allowed the Bar to obtain a summary judgment against him, although the Complaint Tribunal later agreed to set it aside. He showed little remorse for his actions and this Court felt that he still did not seem to understand the seriousness of his conduct. The Court increased the 30-day suspension imposed by the Complaint Tribunal to 180 days. Id. at 1299.
In Myers v. Mississippi State Bar, 480 So.2d 1080 (Miss. 1985), Myers represented a defendant in a double-murder case through his conviction. Two days after the conviction the lawyer left the state, mistakenly believing that the defendant had obtained other counsel to handle his appeal and without obtaining leave of the court to withdraw as counsel. As a result, the client failed to timely file the motion for new trial necessary to perfect his appeal. He was given a suspension of two years. Id. at 1095. However, the result of his negligence imposed more serious consequences on the client than in the case sub judice.
We are of the opinion that appropriate discipline for James M. Hall would be sixty days suspension from the practice of law in the state of Mississippi and it is so ordered.
SIXTY (60) DAYS SUSPENSION TO COMMENCE ON NOVEMBER 15, 1992, ORDERED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN and BANKS, JJ., join this opinion.
McRAE, J., concurs in part and dissents in part with separate written opinion joined in part by DAN M. LEE, P.J.
PITTMAN, J., not participating.
ROBERTS, J., not participating according to Supreme Court internal rules.
McRAE, Justice, concurring in part and dissenting in part:
I agree with the majority that punishment should be administered to Mr. Hall, but as per the Tribunal's decision and not the majority, as this case causes this writer great concern.
This Court takes great care in appointing members to the Tribunals to hear disciplinary *1079 cases. Each Tribunal member is approved by the en banc conference of this Court after being nominated by individual justices. In ethics and discipline cases involving the suspension or rescission of licenses in other professions, we have given great deference to those Tribunal decisions.
We stated in State Board of Psychological Examiners v. Hosford, 508 So.2d 1049, 1054 (Miss. 1987):
The decision of a professional board in a matter regarding the discipline of one of its members may not be overturned where the decision is supported by substantial evidence. Smith v. Sullivan, 419 So.2d 184, 188 (Miss. 1982)... . Harris v. Mississippi Real Estate Commission, 500 So.2d 958, 961-62 (Miss. 1986); Mississippi Board of Nursing v. Belk, 481 So.2d 826, 832 (Miss. 1985); State Board of Psychological Examiners v. Coxe, 355 So.2d 669, 671 (Miss. 1978); Mississippi Board of Veterinary Examiners v. Love, 246 Miss. 491, 150 So.2d 532, 533 (1963).
We also stated in Hosford that in disciplinary matters charges must be proven by clear and convincing evidence:
In a variety of contexts we have held that disciplinary charges against a professional must be proved by clear and convincing evidence. Hogan v. Mississippi Board of Nursing, 457 So.2d 931, 934 (Miss. 1984); Levi v. Mississippi State Bar, 436 So.2d 781, 783 (Miss. 1983); this burden of proof rule applies as well to disciplinary proceedings before the State Board of Psychological Examiners.
... In such case the Chancery Court sits as an appellate court, as do we.
508 So.2d at 1054.
We note also that in a footnote this Court reserved the right to say that cases involving the discipline of other professionals from those involving attorney discipline differ in one aspect, i.e., attorney discipline cases are within our original jurisdiction, and that no substantial evidence or manifest error rule shields decisions of a Complaint Tribunal from our scrutiny, for we proceed de novo in such cases. Brumfield v. Mississippi State Bar, 497 So.2d 800, 806 (Miss. 1986).
In affirming the Commission's order revoking the license of a real estate broker in Harris v. MS Real Estate Commission, 500 So.2d 958 (Miss. 1987), we held that power was vested in the Commission to find fault giving rise to the revocation of a broker's license because she failed in her duty to properly supervise her salespersons.
In a more recent case involving a real estate broker's license, Mississippi Real Estate Commission v. White, 586 So.2d 805 (Miss. 1991), we reaffirmed the position stated in Hosford. In a hearing before the Real Estate Commission concerning a realtor, faced with loss of his broker's license, we said the realtor was protected by "familiar statutes which required that the `testimony ... clearly establish ... the guilt of the respondent.' Harris v. Mississippi Real Estate Commission, 500 So.2d 958, 963 (Miss. 1986)." After again citing Harris and Hosford, the Court went on to say:
On review, however, the Circuit Court had no authority to intervene lest it find the Commission's decision was arbitrary and capricious, a standard we have equated with our familiar substantial evidence rule limiting our scope of review of trial court findings of evidentiary and ultimate fact. Harris v. Mississippi Real Estate Commission, 500 So.2d 958, 962 (Miss. 1986); Smith v. Sullivan, 419 So.2d 184, 187-88 (Miss. 1982); Mississippi Real Estate Commission v. Ryan, 248 So.2d 790, 793-94 (Miss. 1971).
586 So.2d at 808.
Further, in the White case we stated: Because we cannot say with confidence what the Commission's decision would have been had it properly applied the rules of law articulated here, we affirm so much of the decision of the Circuit Court as remands to the Commission but modify that decision to require that the Commission conduct such further proceedings that may be appropriate not inconsistent with this opinion.
586 So.2d at 811.
Stated differently, in White, we did not make the final decision here, but simply *1080 sent the case back to the Real Estate Commission to make a final determination on the license as we review other decisions when appeals are taken from either the circuit or chancery courts.
In a case involving the licensing of nurses, we have stated that the failure of the Mississippi Board of Nursing to allow a nurse an extension of time necessary to complete the documentation required under the grandfather clause was arbitrary, unreasonable and capricious, and reversed and remanded the case to the lower court for further hearing. Mississippi Board of Nursing v. Belk, 481 So.2d 826 (Miss. 1985). We again affirmed that our "standard of appellate review of administrative action is so well settled in this state that a list of cases supporting that proposition would be superfluous." 481 So.2d at 832.
I'm reminded of the fact that we have de novo review. However, Miss. Const. art. III, § 25 states:
No person shall be debarred from prosecuting or defending any civil cause for or against him or herself, before any tribunal in the state, by him or herself, or counsel, or both.
This would require, with our role being de novo, that the accused may require that we conduct the hearings and observe the witnesses. We are not set up for this type of procedure.
Other professional groups have been viewed with the same standard with the exception of attorneys. Why? We on the Court investigate the Tribunal, make the selections of its members and pass on their decisions, whereas with other administrative boards, we do not know the qualifications of their members and only assume they are qualified. Why then can we not give our Tribunals the same deference, credence and authority which we give to other disciplinary boards for other professional groups?
Why are the lawyers treated differently? It should be the reverse  for in our profession, the Court choses those members we feel are best qualified to serve on the Tribunals.
We should give credence to the members of the Tribunals in their decisions. They are the ones that "smell the smoke" and have a lot better feel for the situation and the discipline which should be meted out. We, of course, review cold records and do not get to hear the inflection in the voice or see the mannerisms and non-verbal communication of each witness or litigant present at the hearing.
It is difficult to arrange and coordinate the busy schedules of the Tribunals, which are composed of a trial judge and two practicing attorneys. For this reason, there sometimes is great delay in the Tribunal's hearing cases.
If we are not going to give deference to the Tribunal's decisions, then perhaps it is time we simply abolish the Tribunal system, have a hearing officer to conduct a hearing, and let him/her present the matter to this Court for final judgment. Our Constitution requires due process. Perhaps it's time lawyers are given those rights too.
DAN M. LEE, P.J., joins this opinion in part.