697 So.2d 1164 (1997)
The MISSISSIPPI BAR
v.
Firnist J. ALEXANDER, Jr.
No. 95-BA-01040-SCT.
Supreme Court of Mississippi.
July 24, 1997.
*1165 Michael B. Martz, Jackson, for Appellant.
Everett T. Sanders, Natchez, for Appellee.
En Banc.
MILLS, Justice, for the Court:
¶ 1. On October 28, 1994, the Mississippi Bar filed a Formal Complaint against Firnist J. Alexander, Jr. charging him with violating various provisions of the Mississippi Rules of Professional Conduct. By judgment dated September 11, 1995, the Complaint Tribunal found that Mr. Alexander had engaged in unprofessional and unethical conduct and ordered that he be issued a Public Reprimand. Dissatisfied with the judgment, the Bar appeals to this Court, assigning the following issue.

WHETHER THE SANCTION IMPOSED UPON MR. ALEXANDER, A PUBLIC REPRIMAND, WAS SUFFICIENT UNDER THE CIRCUMSTANCES OF THE CASE, INCLUDING MR. ALEXANDER'S EXTENSIVE RECORD OF PRIOR DISCIPLINE.

FACTS
¶ 2. In April of 1991, Caroline Grice and her husband, Willie Chase Grice, of Baldwin, Mississippi, wanted to trade in their 1986 Dodge Colt for another vehicle. For this purpose, they went to U-Save Auto Rental d/b/a Edward McKinney Used Cars, Inc. in Corinth, Mississippi. After looking at the cars on Mr. McKinney's lot, they found a 1982 Chevrolet Cavalier they liked. A deal was struck whereby the Grices would trade in their Dodge Colt and receive a $250 credit for it on the purchase of the Chevy Cavalier. In addition to trading in the Dodge Colt, the Grices paid $500 as a down payment on the Chevy Cavalier.
¶ 3. At the time the "sale" took place, it was raining and Mrs. Grice was pregnant. Consequently, Mr. Grice did all of the negotiating with the car dealership's representative *1166 while Mrs. Grice waited in another vehicle. Mr. Grice signed what he thought were "purchase papers," but they were actually "lease documents." As the Grices were leaving the used car lot (in a truck they had used to transport the Dodge Colt to the dealership), Mrs. Grice read the "papers" and learned that instead of buying the Chevy Cavalier, they were leasing it, which was not what they meant to do.
¶ 4. The following day, the Grices attempted to recover their Dodge Colt from McKinney's car dealership. They returned to the used car lot where they confronted Mr. McKinney and told him that Mrs. Grice had not signed the "papers." However, Mr. McKinney informed the Grices that the Dodge Colt had already been sold and their transaction was final.
¶ 5. Subsequently, in either June or July of 1991, the Grices contacted Firnist J. Alexander, Jr., a Jackson, Mississippi attorney. The Grices sought advice on whether Mr. Alexander could help them recover their Dodge Colt and the $500 down payment paid to McKinney's car dealership. In November of 1991, the Grices paid Mr. Alexander a $500 retainer fee which was evidenced by a copy of a money order dated November 12, 1991. With the $500 payment, the Grices retained Mr. Alexander to render legal services on their behalf to try to recover their 1986 Dodge Colt, the $500 down payment paid to McKinney's car dealership, and any other sums that could be recovered as a result of any cause of action that Mr. Alexander could recommend to them against Mr. McKinney and/or his car dealership.
¶ 6. Mr. and Mrs. Grice later made numerous attempts to get status reports on this matter from Mr. Alexander. On each occasion he responded by advising them that he was "working on their case" or words to that effect. However, Mr. Alexander did not provide the Grices with any written status reports or copies of any documents or pleadings he was supposed to be filing on their behalf. At the hearing before the Complaint Tribunal, Mr. Alexander testified that he wrote Mr. McKinney a letter in late 1991 and that Mr. McKinney wrote him back, but when asked to produce a copy of said letters, Mr. Alexander did not produce them. Mr. Alexander also testified that he had a file on the Grices' case, but that he neglected to bring it to the hearing.
¶ 7. The Grices had only two contacts with Mr. Alexander in 1991. Although they had regular contact with Mr. Alexander during 1992 and 1993, throughout those years and up to April 28, 1994, the Grices received no correspondence or communication from Mr. Alexander with regard to the status of their case.
¶ 8. In April of 1994, being frustrated with the lack of production and communication from Mr. Alexander, the Grices contacted another attorney, David O. Butts of Tupelo, Mississippi, to help them communicate with Mr. Alexander. Mr. Butts wrote a letter dated April 4, 1994 wherein he informed Mr. Alexander of the Grices' request and asked Mr. Alexander to send a copy of the Grices' file to his Tupelo office at Mr. Alexander's earliest convenience. Notwithstanding Mr. Butts' request made on behalf of Mr. and Mrs. Grice, Mr. Alexander did not comply with the request nor did he return to his clients property which they were entitled to receive. Mr. Alexander also failed to fulfill his contract of employment with the Grices.
¶ 9. Aggrieved by said conduct, Mrs. Grice filed an informal complaint against Mr. Alexander with the Mississippi Bar, which issued a demand letter pursuant to the Rules of Discipline for the Mississippi Bar requesting Mr. Alexander to file a response. Mr. Alexander did not comply with this request. After following the proper investigatory procedures, and at the direction of the Committee on Professional Responsibility, the Bar filed a Formal Complaint against Mr. Alexander charging him with unprofessional and unethical conduct evincing unfitness for the practice of law and warranting the imposition of discipline. After a hearing on the complaint, the Complaint Tribunal on September 11, 1995 made the following findings:
The Tribunal finds, by clear and convincing evidence, that Mr. Alexander's conduct violates certain Rules of Professional Conduct for the Bar approved by the Mississippi Supreme Court, said being:

*1167 A. Rule 1.3, which provides that a lawyer shall act with reasonable diligence and promptness in representing a client.
Mr. Alexander did not act with diligence and promptness nor did he complete the representation he obligated himself to complete on behalf of Mr. and Mrs. Grice. Furthermore, the Tribunal is concerned that the statute of limitations may have run on any cause of action the Grice's may have had against Mr. McKinney and/or his dealership.
B. Rule 1.4, MRPC, which provides that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information and shall further explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.
Mr. Alexander did not keep his clients, Mr. and Mrs. Grice, informed of the status of their case nor did he explain the matter to the extent reasonably necessary to permit them to make informed decisions regarding the representation.
C. Rule 8.1(b), MRPC, which provides that a lawyer in connection with a disciplinary matter shall not fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter or knowingly fail to respond to a lawful demand for information from the disciplinary authority.
On May 19, 1994, the Bar's General Counsel issued a demand letter pursuant to the provisions of Rule 8.1(b), MRPC, to Mr. Alexander for him to file a response to the initial informal complaint filed against him in this matter by Mrs. Grice. No response was submitted by Mr. Alexander to the Bar's demand.
D. Rule 8.4(d), MRCP, which provides that a lawyer shall not engage in conduct that is prejudicial to the administration of justice.
Mr. Alexander has violated Rules 1.3, 1.4 and 8.1(b) of the Mississippi Rules of Professional Conduct. He has failed to represent his clients zealously, failed to timely communicate with them and failed to cooperate with the appropriate disciplinary authority which is the Committee on Professional Responsibility of The Mississippi Bar. In the commission of the aforesaid conduct, Mr. Alexander has engaged in conduct that is prejudicial to the administration of justice in violation of Rule 8.4(d), MRPC.
For his unprofessional and unethical conduct, the Complaint Tribunal ordered that Mr. Alexander be issued a Public Reprimand and that he pay restitution to Mr. and Mrs. Grice in the amount of $550.

DISCUSSION
¶ 10. At the time the Complaint Tribunal ordered disciplinary action against Mr. Alexander in the case sub judice, Mr. Alexander had an extensive record of prior discipline for unprofessional and unethical conduct very similar to the conduct complained of in this case, i.e., neglect, failure to communicate with clients, failure to bring matters to trial and failure to fulfill contracts with clients. Mr. Alexander's prior disciplinary sanctions, from 1980 to 1995, include five Informal Admonitions, a Private Reprimand and three Public Reprimands. In addition, there are subsequent instances of disciplinary action taken against Mr. Alexander which the Complaint Tribunal in the case sub judice did not have for consideration. The Bar filed a Motion to Supplement the Record so that this Court would have these subsequent sanctions for consideration when determining the appropriate disciplinary action in this case, which motion we passed for consideration upon the merits. The subsequent sanctions imposed upon Mr. Alexander are set out below.
¶ 11. On November 17, 1995, the Complaint Tribunal for the Mississippi Bar sanctioned Mr. Alexander with a Public Reprimand and a thirty-day suspension for conduct involving neglect, failure to communicate with clients, unreasonable fees, failure to protect clients' interests upon termination of representation, and failure to respond to a lawful demand for information from the disciplinary authority. On April 11, 1996, we dismissed Mr. Alexander's appeal from that judgment. Attorney *1168 II v. The Mississippi Bar, No. 95-TS01278 (Miss. April 11, 1996).
¶ 12. On February 15, 1996, we imposed a reciprocal sanction against Mr. Alexander for conduct for which he was disciplined by the United States District Court for the Southern District of Mississippi. The Mississippi Bar v. Alexander, 669 So.2d 40 (Miss. 1996). During the previous three years, Mr. Alexander had been sanctioned by the Southern District in at least twenty separate cases and ordered to pay monetary sanctions to the court or to the parties involved by at least five federal judges. Alexander, 669 So.2d at 40. The various sanctions imposed upon Mr. Alexander were for conduct which included: failure to produce or cooperate in discovery; failure to appear; failure to prepare for pre-trial conferences; failure to respond to motions; and failure to submit settlement memos. Id. at 41. Furthermore, Mr. Alexander had disobeyed court orders to pay monetary sanctions in the total amount of $6,651. Id. For his misconduct, the Southern District suspended Mr. Alexander from the practice of law before that court for two years with the exception of his pending cases, should his clients choose to have him continue. Id. Pursuant to Rule 13 of the Rules of Discipline for the Mississippi State Bar, we imposed a reciprocal sanction of an unconditional six-month suspension from practice before state courts. Id. at 42.
¶ 13. The Bar argues that Mr. Alexander's unprofessional and unethical conduct in the instant case, when considered together with his extensive record of prior disciplinary sanctions and his subsequent sanctions for similar conduct, demands more than yet another Public Reprimand, and thus Mr. Alexander should either be disbarred or be suspended for a period of time functionally equivalent to disbarment. Mr. Alexander argues that his subsequent sanctions should not be considered by the Court in this case, and that a Public Reprimand was sufficient discipline under the record before the Complaint Tribunal.

Applicable Law and Standard of Review
¶ 14. The Mississippi Supreme Court has exclusive and inherent jurisdiction in matters pertaining to attorney discipline. The Mississippi Bar v. Alexander, 669 So.2d 40, 41 (Miss. 1996); Asher v. The Mississippi Bar, 661 So.2d 722, 727 (Miss. 1995); R. Discipline Mississippi State Bar 1(a). Furthermore, this Court conducts a de novo review in bar disciplinary matters. Alexander, 669 So.2d at 41; Mississippi Bar v. Attorney R., 649 So.2d 820, 824 (Miss.), cert. denied, 515 U.S. 1144, 115 S.Ct. 2582, 132 L.Ed.2d 831 (1995). Because Mr. Alexander does not contest  but in fact supports  the Complaint Tribunal's imposition of discipline for conduct unbecoming a lawyer, the sole issue before this Court is the extent of the final discipline, which may be more or less severe than that imposed by the Complaint Tribunal.
¶ 15. There are two sets of criteria to which this Court looks when determining sanctions for attorney misconduct. The first set of criteria was developed through our case law and includes:
(1) the nature of the conduct involved;
(2) the need to deter similar misconduct;
(3) the preservation of the dignity and reputation of the profession;
(4) the protection of the public; and,
(5) the sanctions imposed in similar cases.
Alexander, 669 So.2d at 42; Attorney R., 649 So.2d at 824-25.
¶ 16. The second set of criteria originates from Standard 3.0 of the American Bar Association's guidelines and includes:
(a) the duty violated;
(b) the lawyer's mental state;
(c) the actual or potential injury resulting from the misconduct, and the existence of aggravating or mitigating factors.
Alexander, 669 So.2d at 42; L.S. v. Mississippi Bar, 649 So.2d 810, 815 (Miss. 1994) (quoting Mississippi Bar v. Attorney ST, 621 So.2d 229, 233 (Miss. 1993)).
¶ 17. It is well settled that prior disciplinary sanctions against an attorney, especially those for similar conduct, will be considered by this Court as an aggravating factor in determining disciplinary measures. See Terrell v. Mississippi Bar, 662 So.2d 586, 592-93 (Miss. 1995); The Mississippi Bar v. Hall, 612 So.2d 1075, 1077-78 (Miss. 1992); Haimes v. Mississippi Bar, 601 *1169 So.2d 851, 853 (Miss. 1992); Culpepper v. Mississippi State Bar, 588 So.2d 413, 421 (Miss. 1991).

Consideration of Subsequent Sanctions
¶ 18. We discussed a similar issue in the case of Hall v. Mississippi Bar, 631 So.2d 120, 126-27 (Miss. 1993). In that case, the instances of misconduct which were the subject of the action before the Court preceded the attorney's prior disciplinary sanctions. Hall, 631 So.2d at 126. We stated:
Obviously, the validity of considering prior discipline as an aggravating factor is based on the idea that one who violates the Rules again after being disciplined requires a harsher discipline for subsequent misconduct. This is apparently not the case with Hall. As far as the record reflects, his professional conduct has been adequate since his first reprimand in 1990. In simple terms, Hall's previous punishments may have provided the wake-up call he needed. Thus, a strong argument can be made that further discipline is not necessary to accomplish the goals of the Rules of Discipline and would only serve to punish Hall twice for the same basic misconduct... . Had Hall bothered to appear and make this argument, we might be inclined to agree.
Id. Because Hall had further demonstrated his general pattern of tardiness and delay by failing to appear before the Complaint Tribunal in 1991, we determined that a second suspension was not overly harsh. Id. at 126-27.
¶ 19. The above argument towards which we expressed some inclination is inapplicable to Mr. Alexander. The record reflects that, unlike Hall's, Mr. Alexander's professional conduct has not been adequate since his first disciplinary sanction. Mr. Alexander's conduct giving rise to the Complaint Tribunal's imposition of discipline in the case sub judice occurred after he had already received four Informal Admonitions, a Private Reprimand and two Public Reprimands for similar conduct. Obviously, these sanctions did not have the effect of providing Mr. Alexander the "wake-up call" he needed, as is evidenced both by his conduct in this case and by his subsequent federal and state court sanctions. The ordinarily severe sanction of Public Reprimand apparently has had little or no effect on Mr. Alexander's behavior.
¶ 20. Regarding any due process concerns raised by the consideration of subsequent sanctions as an aggravating factor, we note the law as it applies to capital murder cases, where due process rights are most fiercely protected. We have repeatedly held that convictions subsequent to the crime for which a person is being sentenced may be used as proof of aggravating circumstances. Taylor v. State, 672 So.2d 1246, 1275 (Miss.), cert. denied, ___ U.S. ___, 117 S.Ct. 486, 136 L.Ed.2d 379 (1996); Turner v. State, 573 So.2d 657, 670 (Miss. 1990), cert. denied, 500 U.S. 910, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991); Leatherwood v. State, 435 So.2d 645, 651-52 (Miss. 1983), cert. denied, 465 U.S. 1084, 104 S.Ct. 1455, 79 L.Ed.2d 772 (1984); Jones v. State, 381 So.2d 983, 994 (Miss.), cert. denied, 449 U.S. 1003, 101 S.Ct. 543, 66 L.Ed.2d 300 (1980); Reddix v. State, 381 So.2d 999, 1009-10 (Miss.), cert. denied, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). If the jury's consideration of subsequent convictions does not offend the defendant's due process rights in capital murder cases, then plainly the same would hold true of our consideration of subsequent sanctions in attorney discipline cases, where our review is de novo.
¶ 21. In Hall, the Bar moved to strike certain portions of Hall's appeal brief which provided mitigation evidence not presented to the Complaint Tribunal. 631 So.2d at 127. We denied the motion, ruling that attorneys in disciplinary appeals "can attempt to present mitigation in briefs and oral argument, if granted." Id. Likewise, we grant the Bar's Motion to Supplement the Record with evidence of Mr. Alexander's subsequent disciplinary sanctions and rule that such evidence may be considered as an aggravating factor when determining appropriate disciplinary measures.

Sufficiency of the Sanction Imposed By the Complaint Tribunal
¶ 22. We find that the facts and circumstances of this case warrant a sanction more *1170 severe than a Public Reprimand. Aside from constituting a weighty aggravating factor unto itself, Mr. Alexander's extensive record of prior sanctions is implicated in each of the common law factors considered by this Court when determining disciplinary measures.
¶ 23. Nature of the Conduct Involved. In this case, Mr. Alexander neglected his duties to his clients while assuring them he was working on their case, blatantly ignored their pleas for action and communication, and failed to cooperate with the disciplinary authority in its investigation of the matter. "This Court will not hesitate to impose substantial sanctions upon an attorney for any act which evinces a want of personal honesty and integrity or renders such attorney unworthy of public confidence." Foote v. Mississippi State Bar Ass'n, 517 So.2d 561, 564 (Miss. 1987). We find that the conduct in which Mr. Alexander engaged despite his repeated disciplinary sanctions for similar conduct evinces a want of personal honesty and integrity and renders him unworthy of public confidence. Furthermore, his conduct evinces a flagrant lack of regard and respect for the directives both by the Bar and by this Court to cease engaging in such conduct.
¶ 24. Need to Deter Similar Misconduct. Aside from the obvious importance of deterring attorneys from neglecting the representation of their clients and failing to cooperate with the Bar, there is an equally important need to deter attorneys from failing to heed sanctions imposed for such conduct.
¶ 25. Preservation of the Dignity and Reputation of the Profession. Although reluctant to use the cliche, "one bad apple spoils the bunch," we believe that Mr. Alexander, as evidenced by his fifteen year history of unprofessional and unethical conduct, is one of the worst apples of them all. There can be little wonder why the dignity and reputation of the legal profession has come under fire in recent years  it is because of conduct like Mr. Alexander's. We can only conclude that removing him from the practice of law is essential to preserving the dignity and reputation of the profession.
¶ 26. Protection of the Public. The record reflects that Mr. Alexander's prior disciplinary sanctions, including three Public Reprimands, have done little or nothing to protect the public from his apparently compulsive unprofessional and unethical conduct. There can be little doubt something more than a Public Reprimand is needed.
¶ 27. Sanctions Imposed in Similar Cases. Fortunately, we have decided no case in which the attorney has had such an extensive record of disciplinary sanctions, save the most recent case involving Mr. Alexander himself, The Mississippi Bar v. Alexander, 669 So.2d 40 (Miss. 1996). In that case, we noted Mr. Alexander's federal court sanctions in at least twenty separate cases involving neglect and imposed a reciprocal six-month suspension on top of the district court's conditional two-year suspension. Alexander, 669 So.2d at 40-42. Likewise, the time has come to act upon Mr. Alexander's history of misconduct in our state courts as well.
¶ 28. In Terrell v. Mississippi Bar, 662 So.2d 586, 588-89 (Miss. 1995), the attorney had engaged in conduct virtually identical to that of Mr. Alexander in this case, i.e., neglect, failure to keep client advised of status of case, and refusing to return fee even though no work had been performed on client's behalf. The Complaint Tribunal imposed a six-month suspension to run concurrently with an earlier suspension. Terrell, 662 So.2d at 592. Noting the gravity of the misconduct and the attorney's history of professional misconduct, we enhanced the Complaint Tribunal's sanction by imposing a six-month suspension not to run concurrently with any other discipline. Id. at 592-94.
¶ 29. In The Mississippi Bar v. Hall, 612 So.2d 1075, 1078 (Miss. 1992), we held that the attorney's neglect of a client's case, after having been previously disciplined for similar conduct, warranted a sixty-day suspension. A year later, we imposed a ninety-day suspension on the same attorney for similar conduct involving neglect. Hall v. Mississippi Bar, 631 So.2d 120, 127 (Miss. 1993).
¶ 30. In Fougerousse v. Mississippi State Bar Ass'n, 563 So.2d 1363, 1366-67 (Miss. 1990), we imposed two ninety-day suspensions to run concurrently for the attorney's pattern of delay and neglect in the representation *1171 of clients and in the defense of disciplinary proceedings. In Foote v. Mississippi State Bar Ass'n, 517 So.2d 561, 566-67 (Miss. 1987), we held that a ninety-day suspension was an appropriate sanction for neglecting a criminal matter after having received a fee, failing to keep the client adequately informed, failing to return the client's telephone calls, and misleading the client as to the status of the case.
¶ 31. Considering the sanctions imposed in similar cases, we agree with the Bar that a Public Reprimand was insufficient under the facts and circumstances of this case.

CONCLUSION
¶ 32. Considering Mr. Alexander's unprofessional and unethical conduct in the instant case together with his extensive record of disciplinary sanctions for similar conduct, we impose upon him, in addition to a Public Reprimand, an unconditional suspension for one year from the practice of law in state courts, not to run concurrently with any other suspension that may presently be in effect. Firnist J. Alexander, Jr. must pass all sections of the bar exam before the petition for reinstatement can be filed.
¶ 33. SANCTION OF PUBLIC REPRIMAND AFFIRMED. FIRNIST J. ALEXANDER, JR. SUSPENDED FROM THE PRACTICE OF LAW FOR ONE YEAR NOT TO RUN CONCURRENTLY WITH ANY OTHER SUSPENSION. FIRNIST J. ALEXANDER, JR. MUST TAKE AND PASS BAR EXAM AT THE END OF ONE YEAR SUSPENSION BEFORE THE PETITION FOR REINSTATEMENT CAN BE FILED.
PRATHER and SULLIVAN, P.JJ., and PITTMAN, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
BANKS, J., concurs in part and dissents in part with separate written opinion.
DAN LEE, C.J., not participating.
BANKS, Justice, concurring in part and dissenting in part:
¶ 34. I concur in the imposition of a one year suspension for the reasons expressed in my dissent in Emil v. The Miss. Bar, 690 So.2d 301 (Miss. 1997). However, I dissent from the imposition of the requirement that the attorney take the bar examination before readmission.